# IN THE UNITED STATES DISTRICT
# FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| ARGONAUT GREAT CENTRAL INSURANCE COMPANY, <br><br> Plaintiff, <br><br> vs. <br><br> LINCOLN COUNTY, MISSOURI, <br> SERGEANT RYAN J. McCARRICK, <br> DETECTIVE MICHAEL MERKEL, <br> DETECTIVE PATRICK HARNEY, <br> PROSECUTING ATTORNEY LEAH ASKEY, <br> and RUSSELL SCOTT FARIA, <br><br> Defendants. | Cause No.: 4:17-cv-762 <br><br> **JURY DEMANDED** |

## PETITION FOR DECLARATORY JUDGMENT

COMES NOW Plaintiff, Argonaut Great Central Insurance Company ("AGCIC"), by its attorneys, Foley & Mansfield, P.L.L.P., pursuant to 28 U.S.C. Section 2201 *et seq*. and Federal Rule of Civil Procedure 57, and for its Petition for Declaratory Judgment directed against the Defendants, Lincoln County, Missouri, Sergeant Ryan J. McCarrick, Detective Michael Merkel, Detective Patrick Harney, Prosecuting Attorney Leah Askey (the "Underlying Defendants"), and Russell Scott Faria, states as follows:

### Jurisdiction

1. Jurisdiction is founded on diversity of citizenship pursuant to 28 U.S.C. Section 1332, based upon the facts more specifically alleged in paragraphs 3 to 8 below.

2. The amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.

**Parties**

3. Plaintiff AGCIC is now and at all times relevant to this action was an Illinois corporation authorized by the Missouri Department of Insurance to engage in the business of writing and selling insurance in Missouri, with its principal place of business located at its home office at 225 West Washington, Chicago, Illinois. For purposes of diversity jurisdiction, AGCIC is a citizen of Illinois.

4. Defendant Lincoln County, Missouri now is, and at all times relevant to this action was, a properly formed county in the State of Missouri with its county seat at 201 Main Street, Troy, Missouri. For purposes of diversity jurisdiction, Lincoln County is a citizen of Missouri.

5. Based on the allegations of the complaint in *Russell Scott Faria v. Sergeant Ryan J. McCarrick, et al.*, Case No. 4:16-CV-01175 JAR, pending in the United States District Court for the Eastern District of Missouri (the "Underlying Complaint"), and independent investigation, Defendant Sergeant Ryan J. McCarrick ("McCarrick") now is, and at all times relevant to this action was, a resident of Missouri, and a citizen of the State of Missouri.

6. Based on the allegations of the Underlying Complaint and independent investigation, Defendant Detective Michael Merkel ("Merkel") now is, and at all times relevant to this action was, a resident of Missouri, and a citizen of the State of Missouri.

7. Based on the allegations of the Underlying Complaint and independent investigation, Defendant Detective Patrick Harney ("Harney") now is, and at all times relevant to this action was, a resident of Missouri, and a citizen of the State of Missouri.

8. Based on the allegations of the Underlying Complaint and independent investigation, Defendant Prosecuting Attorney Leah Askey ("Askey") now is, and at all times relevant to this action was, a resident of Missouri, and a citizen of the State of Missouri.

9. Based on the allegations of the Underlying Complaint and independent investigation, Defendant Russell Faria ("Russell") now is, and at all times relevant to this action was, a resident of Missouri, and a citizen of the State of Missouri.

### Venue

10. Venue lies in this district pursuant to 28 U.S.C. Section 1391 because Lincoln County is deemed to reside in the Eastern District of Missouri and all Defendants are citizens of the State of Missouri.

### Insurance Policies

11. During the period from January 1, 2012 to January 1, 2014, AGCIC provided liability insurance coverage to Lincoln County in accordance with the terms and provisions of a series of two insurance policies which were issued each year by AGCIC (the "Policies").

12. A true and correct copy of certified Policy Nos. 4627390-00 and 4629239-01 are attached hereto as **Exhibit A** and incorporated by reference. Both policies are identical.

### General Statement of Facts and Underlying Lawsuit

13. On July 19, 2016, Russell Scott Faria filed a complaint against Sergeant Ryan J. McCarrick, Detective Michael Merkel, Detective Patrick Harney, and Prosecuting Attorney Leah Askey in the United States District Court for the Eastern District of Missouri, entitled *Russell Scott Faria v. Sergeant Ryan J. McCarrick, et al.*, Case No. 4:16-CV-01175 JAR (the "Underlying Lawsuit"). On September 15, 2016, Russell Faria filed a First Amended Complaint adding Lincoln County, Missouri as a defendant. A true and correct copy of the First Amended Complaint (the "Underlying Complaint") is attached hereto as **Exhibit B**.

14. The Underlying Lawsuit seeks compensatory and punitive damages for violations of Russell's Fourth and Fourteenth Amendment rights by arresting and prosecuting him for the murder of his wife, Betsy Faria.

15. The Underlying Complaint alleges that Russell was at a friend's house at the time of the murder, which occurred at the Faria's house on the night of December 27, 2011. The facts state that Russell was "seized" on December 28, 2011 at 1:00 a.m., administered a faux polygraph on the afternoon of December 28, and was released at 4:30 p.m. on December 29. The Underlying Complaint alleges McCarrick and Merkel conducted a luminescence test on January 2, 2012 and, on January 4, McCarrick signed a Probable Cause Statement asserting that Russell committed the murder and Askey filed charges against Russell. His first trial in November 2013 resulted in a guilty verdict. In February 2015, the Court of Appeals remanded the case and, in June 2015, a new trial was ordered. In November 2015, Russell was found not guilty on all charges.

16. Count I alleges that Sergeant McCarrick detained Russell at the Lincoln County Sheriff's Department without probable cause, in violation of the Fourth Amendment, and held him there for more than 24 hours without charging him, in violation of Missouri Law. Specifically, Russell alleges that he was "seized" in the context of the Fourth Amendment at approximately 1:00 a.m. on December 28, 2011 because, though he voluntarily went to the station, 1:00 a.m. was the moment when a reasonable person would not have felt free to leave. He alleges that he was not released until 4:30 p.m. on December 29, 2011, approximately 39½ hours after he was seized. He also alleges that McCarrick did not have probable cause to detain him because he knew of but ignored evidence negating probable cause.

17. Count II alleges that McCarrick knowingly fabricated evidence and made false statements in the Probable Cause Statement which was used to charge Russell with murder. It alleges that McCarrick had no objectively reasonable belief that Russell murdered Betsy and failed to consider exculpatory evidence and evidence implicating another individual, Pamela Marie Hupp. Specifically, the count alleges that, after Russell was released, McCarrick and others performed a "Blue Star" luminescence test. In the Probable Cause Statement, McCarrick stated that the test revealed that blood evidence had been cleaned from the crime scene and there was blood on the handle of a kitchen drawer that held towels. The Underlying Complaint alleges that photos of the test prove that these statements were false and that, without the luminescence evidence, there was insufficient probable cause to charge Russell. It states that each defendant's conduct was "truly egregious and extraordinary" and amounted to a "brutal and inhumane abuse of official power."

18. Count III alleges that Prosecuting Attorney Askey seized and incarcerated Russell without probable cause. It alleges that Askey 1) improperly participated in and influenced the investigation; 2) knew McCarrick's statements about the luminescence evidence was false and that she had no probable cause without those statements; 3) ignored evidence exonerating Russell and implicating Pamela Hupp; and 4) failed to test the family dog's paw for blood, which could have exonerated Russell. As a result, Russell was incarcerated for 41 months and 12 days.

19. Count IV is the only count asserted against all defendants, and the only one asserted against Detective Harney. It alleges the defendants conspired to seize Russell and deny him substantive due process in violation of the Fourth and Fourteenth amendment. It alleges that, in furtherance of this conspiracy:

> a. McCarrick and Merkel fabricated the luminescence evidence and Askey participated in the fabrication.

5

    b. The defendants concealed the fabrication by failing to produce photos of the test.

    c. All defendants refused to test for blood on gloves found in the home, when doing so would have assisted Russell and not the prosecution.

    d. McCarrick administered an unconstitutional faux polygraph to get Russell to confess and then covered it up by failing to produce the results.

    e. McCarrick spoke to Russell without his counsel present in an attempt to elicit a confession.

    f. All defendants failed to consider evidence exonerating Russell and implicating Pamela Hupp.

    g. McCarrick, Merkel, and Harney fabricated evidence by telling Pamela to put Betsy's life insurance proceeds into a trust for Betsy's children and suggesting to her that she saw Russell near the house on the night of the murder.

    h. Askey acted as an investigator.

20. Count V is a malicious prosecution claim against McCarrick and Merkel. It alleges that they maliciously instituted criminal proceedings against Russell when there was no probable cause to do so.

21. Count VI asserts a *Monell* claim against Lincoln County, alleging that Lincoln County was the moving force behind Russell's damages because Prosecuting Attorney Askey acted as a policymaker for Lincoln County in causing the investigation to shift from searching for the perpetrator to searching for evidence to support her chosen theory.

22. Counts I-IV contain an allegation that the defendants acted "recklessly," and Counts I-V an allegation that the actions of all defendants were "Malicious or recklessly indifferent to Plaintiff's constitutional rights," and "taken in the face of a perceived risk that they

would violate federal law." The Underlying Complaint alleges that each defendant was plainly incompetent and knowingly violated the law.

23. Lincoln County made demand and claim upon AGCIC under the Policies of insurance described in this petition for claims made against it in the Underlying Lawsuit, including request for defense and indemnity.

24. AGCIC has undertaken defense of the Underlying Defendants in the Underlying Lawsuit under a reservation of rights. Additionally, AGCIC has taken the position and has advised the Underlying Defendants that no coverage for the actions alleged in the Underlying Lawsuit is provided by the Policies described in this petition since, among other reasons, they are not "wrongful acts" under the Policies; are deemed to be a single "wrongful act" that was first committed before the Policies became effective; and are affirmatively excluded under an exclusion for malicious or criminal acts, errors or omissions and knowing violations of the law.

## Declaratory Judgment

25. The Policies do not provide any coverage for defense or indemnity of the Underlying Lawsuit as no fact is alleged which places the Underlying Lawsuit within that coverage.

26. AGCIC owes no coverage to Lincoln County based on the terms and provisions of the Policies. The Policies contain, *inter alia*, the following provisions:

    A. Part H of "Common Policy Conditions," titled "Governmental Immunity," states:

        Because you are a public institution, you may be entitled to a governmental immunity. This policy does not constitutive a waiver of any governmental immunity to which you are entitled.

    B. The "Sovereign Immunity Non-Waiver Endorsement" states:

        In consideration of the premium charged, it is hereby agreed and understood that the policy(ies), coverage part(s) or coverage

7

form(s) issued by us provide(s) no coverage for any "occurrence", "offense", "accident", "wrongful act", claim or suit for which any insured would otherwise have an exemption or no liability because of sovereign immunity, any governmental tort claims act or laws, or any other state or federal law. Nothing in this policy, coverage part or coverage form waives sovereign immunity for any insured.

It is further agreed and understood that the limit of liability of the policy(ies), coverage part(s) or coverage form(s) issued by us, either individually, in conjunction with each other or in conjunction with other policy(ies), coverage part(s) or coverage form(s) of other companies, do not, in any manner, waive the limits of liability established in any governmental tort claim act applicable to any "occurrence", "offense", "accident", "wrongful act", claim or suit.

**C.** Section I, part A of the Law Enforcement Liability Coverage Part, titled "Insuring Agreement," states:

We will pay those sums that the insured becomes legally obligated to pay as "damages" resulting from a "wrongful act" to which this insurance applies that is committed during the course and scope of "law enforcement activities", or which arise out of your ownership, maintenance or use of premises for the purpose of conducting "law enforcement activities".

We will have the right and duty to defend the insured against any "suit" seeking those "damages".  However, we will have no duty to defend the insured against any "suit" seeking "damages" for a "wrongful act" to which this insurance does not apply.  We may, at our discretion, investigate any "wrongful act" and settle any claim or "suit" that may result.

\*                                    \*                                    \*

This insurance applies to "damages" arising out of a "wrongful act" only if the "wrongful act" was first committed:
> a. By an insured in the course of his or her "law enforcement activities" and
> b. During the policy period.

**D.** Section I, part B of the Law Enforcement Liability Coverage Part, titled "Exclusions," states that "this insurance does not apply to:"

2. Any claim arising out of:

8

      a.      a dishonest, malicious, fraudulent or criminal act, error or omission by any person including actual or threatened acts of sexual abuse or molestation, or
      b.      a knowing violation of any law, statue or governmental regulation.

**E.** Section II of the Law Enforcement Liability Coverage Part, titled "Who Is An Insured," states:

> You are an insured, and
> Each of the following is an insured but only for acts that were both within the scope of his or her duties for you, **and motivated, at least in part, by a purpose to serve you**:
> 1. Any member of the governing body of the named insured.
> 2. Any boards, commissions and councils of the named insured and their members.
> 3. Any elected or appointed official of the named insured.
> 4. Any "employee" or authorized volunteer of the named insured.
> 5. Any "employee" of the Named Insured with respect to the conduct of any multi-jurisdictional law enforcement organization.

(emphasis added).

**F.** Section IV of the Law Enforcement Liability Coverage Part, titled "Conditions," states:

> The insurance provided by this Coverage Part is excess over any other collectible insurance.  We will have no duty to defend the insured against any "suit" or claim for "damages" if any other insurer has a duty to defend the insured against that "suit".

**G.** Section V of the Law Enforcement Liability Coverage Part, titled "Definitions," defines certain policy terms as follows:

> 3. "Damages" means money "damages".  "Damages" does not include any amount awarded as liquidated "damages" pursuant to any federal or state statute.  "Damages" does not include punitive "damages", unless required by state law.
>    \*                      \*                      \*
> 6. "Law Enforcement Activity(ies)" means administration of the criminal justice system and/or any act, error or omission of

9

>
> your law enforcement agency, its officials, officers, "employees"
> or volunteers.  "Law Enforcement Activity" also includes the use,
> operation or maintenance of any premises by your law
> enforcement agency.
> *             *             *
> 11. "Wrongful Act" means any act, error or omission flowing
> from or originating out of a "law enforcement activity".  All acts,
> errors or omissions, committed by one or more insureds that are
> substantially the same or are in any way directly or indirectly
> related — either logically, causally, or temporally — shall be
> deemed to constitute one "wrongful act", regardless of the number
> of claims or claimants.

    **H.**  The Public Officials Liability Coverage Part states that "This insurance applies only to a 'claim' for 'damages' first made against any insured during the policy period" and that "no coverage for any claim shall apply under this Coverage Part if coverage has been excluded below":

> 26. Activity or function by or on behalf of any law enforcement
> agency or any agent thereof and/or activity or function related to
> the administration of the criminal justice system;
> 17. Jail Penal Institution or similar type facility;

    **I.**  The "Additional Exclusions" part of the "Commercial General Liability Coverage Form" states that "no coverage applies for any claim involving any:"

> 11. Activity or function by or on behalf of any law enforcement
> agency or any agent thereof and/or activity or function related to
> the administration of the criminal justice system;
> 12. Jail Penal Institution or similar type facility.

    27.    The factual allegations in the Underlying Lawsuit do not constitute a "Wrongful Act" under the Policies. The Policies only provide for the payment of damages or the defense of a lawsuit arising out of "'damages' resulting from a 'wrongful act'" and defines "Wrongful Act" as "any act, error or omission flowing from or originating out of a 'law enforcement activity'." Courts have interpreted similar clauses as essentially covering negligent conduct, not intentional

misconduct. *Matthew T. Szura & Co. v. Gen. Ins. Co. of Am.*, 543 F. App'x 538, 542 (6th Cir. 2013); *Cincinnati Ins. Co. v. Meramec Valley Bank*, 259 F. Supp. 2d 922 (E.D. Mo. 2003). However, the Underlying Lawsuit does not make any allegation of negligence. Rather, it alleges that all defendants engaged in intentional misconduct that "went far beyond mere negligence." Therefore, the acts alleged in the Underlying Complaint are not "wrongful acts" as defined by the Policies. Therefore, the Policies provide no coverage for the claims in the Underlying Lawsuit.

28. Even if it was determined that the allegations in the Underlying Lawsuit constituted "wrongful acts" under the Policies, such acts, errors, and omissions alleged would be deemed to be a single "Wrongful Act." Clauses like that contained in the Policies, collapsing acts, errors, and omissions that "are in any way directly or indirectly related" into a single act, have been enforced as unambiguous. See *Bar Plan Mut. Ins. Co. v. Chesterfield Mgmt. Assoc.*, 407 S.W.3d 621, 629 (Mo.App. E.D. 2013); *Kilcher v. Cont'l Cas. Co.*, 747 F.3d 983 (8th Cir. 2014); *Thornburgh Insulation, Inc. v. J.W. Terrill, Inc.*, 236 S.W.3d 651, 656 (Mo. Ct. App. E.D. 2007). The Underlying Complaint alleges a series of related acts, including fabricating evidence, ignoring exculpatory evidence, and unconstitutionally detaining and charging Russell without probable cause, all in furtherance of a conspiracy. These acts are substantially the same because they are all part of the investigation and prosecution of a single individual for a single crime. Thus, the actions alleged in the Underlying Lawsuit are deemed to be a single "Wrongful Act" for the purposes of the Policies.

29. The "Wrongful Act" alleged in the Underlying Lawsuit occurred prior to the initial Policy period. Coverage under the Policies is available "only if the 'wrongful act' was first committed . . . [d]uring the policy period." Here, the earliest wrongful act that Russell alleges is

that he was seized without probable cause at 1:00 a.m. on December 28, 2011. (Exhibit B at ¶ 417, 421, 426). He also alleges a number of other acts or omissions that occurred before the effective date of the Policies: that he was administered an unconstitutional "faux polygraph" on the afternoon of December 28 (*Id.* at ¶ 174, 198, 487); that 1:00 a.m. on December 29 is the moment when he was held beyond the 24-hour maximum for holding a suspect without charging them (*Id.* at ¶ 414–426); that the defendants failed to consider exculpatory evidence and evidence inculpating Pamela Hupp (*Id.* at ¶ 449, 451, 465–66, 489–90); that prosecutor Askey was improperly involved in the investigation (*Id.* at ¶ 460–62, 465, 467–471); and that the defendants failed to conduct blood tests on the family dog's paw and a pair of gloves found in the home (*Id.* at ¶ 158–173; 149–157, 468, 486). Thus, any "wrongful act" alleged against the Underlying Defendants was first committed on December 28, 2011, prior to the initial Policy period which began on January 1, 2012.

30. The acts alleged in the Underlying Lawsuit fall within the Policies' exclusions for "malicious" or "criminal" acts, errors, or omissions or a "knowing violation of any law." Each count of the Underlying Complaint alleges that the acts of each defendant were "malicious or recklessly indifferent to Plaintiff's constitutional rights" and "taken in the face of a perceived risk that they would violate federal law." (*Id.* ¶ 401, 431, 458, 479, 514, 524). The Underlying Complaint also alleges that "all of the Defendants knowingly violated the law." (*Id.* at ¶ 408). It states that each defendant acted recklessly, and their conduct was "truly egregious and extraordinary," "shocks the conscience," and amounted to a "brutal and inhumane abuse of official power." (*Id.* at ¶ 453, 469, 500,) Lastly, it alleges that the conduct of all defendants "went far beyond mere negligence." (*Id.* at ¶ 501). The facts state that the defendants knowingly fabricated evidence and lied about it in order to charge Russell. Conversely, there is no allegation

of negligent conduct anywhere in the Underlying Complaint. Similar exclusions have been upheld to preclude insurance coverage in similar cases where the complaint alleges intentional misconduct. See *Custom Hardware Eng'g & Consulting, Inc. v. Assurance Co. of Am.*, 295 S.W.3d 557 (Mo.App. E.D. 2009); *Clarendon Nat. Ins. Co. v. City of York*, 121 Fed. Appx. 940 (3d Cir. 2005); *Gordon v. Hartford Fire Ins. Co.*, 105 Fed. Appx. 476 (4th Cir. 2004); *Rose Acre Farms, Inc. v. Columbia Cas. Co.*, 662 F.3d 765 (7th Cir. 2011). Therefore, the Policies operate to preclude coverage under the exclusions for malicious and criminal acts, errors, or omissions and knowing violations of the law.

31.	Any insurance policy in effect prior to January 1, 2012 is primary and AGCIC's Policies, which became effective in 2012, are excess over any such insurance. The Policies state that "[t]he insurance provided by this Coverage Part is excess over any other collectible insurance." So, even if coverage were available under any of the Policies, any policy in effect prior to January 1, 2012 would provide primary coverage for the Underlying Lawsuit, and the AGCIC Policies would only be excess over that primary insurance.

32.	The Policies cover "any elected or appointed official" of Lincoln County. Prosecuting Attorney Askey was elected pursuant to Missouri state statute, Chapter 56. Chapter 56 establishes how county prosecutors are elected, what their duties are, and how they are compensated. Since Aksey's position was created, maintained, and governed by the State of Missouri, she is an elected official of Missouri and not Lincoln County.

33.	Based on the Policies' provision as to "Who Is An Insured," an elected or appointed official, employee, etc. is an insured only for acts "motivated, at least in part, by a purpose to serve" Lincoln County. The factual allegations in the Underlying Lawsuit do not allege acts motivated by a purpose to serve Lincoln County. Therefore, there is no coverage for

Defendants Sergeant Ryan J. McCarrick, Detective Michael Merkel, Detective Patrick Harney, and Prosecuting Attorney Leah Askey, as those Defendants are not Insureds under the Policies.

34. A governmental employee, such as a law enforcement official, is not liable in tort for discretionary activities because of the doctrine of official immunity. *Southers v. City of Farmington*, 263 S.W.3d 603, 610 (Mo. 2008). Sovereign immunity protects counties and their officers from tort liability and extends to the employees acting on behalf of the county. *Reardon v. St. Louis Cty.*, 36 Mo. 555, 562 (1865). Prosecutors are absolutely immune for suit arising from their evaluation of evidence, preparation and filing of charging documents, deciding to prosecute, presentation of evidence at trial. *Buckley v. Fitzsimmons*, 509 U.S. 259, 113 S. Ct. 2606, 125 L. Ed. 2d 209 (1993); *Kalina v. Fletcher*, 522 U.S. 118, 118 S. Ct. 502, 139 L. Ed. 2d 471 (1997); *Hartman v. Moore*, 547 U.S. 250, 126 S. Ct. 1695, 164 L. Ed. 2d 441 (2006). The Policies specifically state that they "do[] not constitute a waiver of any governmental immunity to which you are entitled," and "nothing in this policy . . . waives sovereign immunity for any insured." They also state that the Policies "provide(s) no coverage for any 'occurrence', 'offense', 'accident', 'wrongful act', claim or suit for which any insured would otherwise have an exemption or no liability because of sovereign immunity." Here, Sergeant McCarrick and Detectives Merkel and Harney are law enforcement officials protected from suit by official immunity. Prosecuting Attorney Askey is protected by prosecutorial immunity. Lincoln County and all of its public officers are immune from liability under the doctrine of sovereign immunity. Because the Policies "provide[] no coverage for any 'occurrence', 'offense', 'accident', 'wrongful act', claim or suit for which any insured would otherwise have an exemption or no liability because of sovereign immunity," they provide no coverage for the Underlying Lawsuit, where the insureds have an exemption and no liability because of their governmental immunity.

35. As set forth above, the Law Enforcement Liability coverage part does not provide coverage. Moreover, none of the other coverage parts, including the Commercial General Liability, Public Officials' Liability, and Commercial Excess Liability parts, provide coverage either. The Commercial General Liability and Public Officials' Liability parts both state that "no coverage applies for any claim involving any . . . activity or function by or on behalf of any law enforcement agency or any agent thereof and/or activity or function related to the administration of the criminal justice system" or "Jail Penal Institution or similar type facility." Further, the Public Officials' Liability Part is a claims-made policy that only covers claims that are first made during the policy period. Here, Russell did not file suit until July 2016 and the policy period ended on January 1, 2014.

36. Finally, the Commercial Excess Liability part only provides coverage if the underlying coverage parts provide coverage but have been exhausted. Section I states that AGCIC "will pay those sums that the insured becomes legally obligated to pay as 'damages' in excess of all 'underlying insurance', but only after all 'underlying insurance' has been exhausted by payment of the limits of such insurance. This insurance is subject to the same terms, conditions, agreements, exclusions and definitions as the 'underlying insurance.'"

37. Based on the terms and conditions of the Policies, there is no coverage for the claims and allegations against the Underlying Defendants regarding the Underlying Lawsuit, including claims for punitive damages.

38. AGCIC is entitled to a declaratory judgment that its Policies do not provide coverage to the Underlying Defendants for the allegations in the Underlying Lawsuit, and for AGCIC's costs.

39. An actual justiciable controversy exists concerning the rights, duties, and obligations of the parties arising out of the terms and conditions of the Policies.

### Prayer

**WHEREFORE**, AGCIC respectfully requests that the court enter its judgment as follows:

1. Declaring that the Argonaut Great Central Insurance Company Policy Nos. 4627390-00 and 4629239-01 do not provide coverage for the claims made against the Underlying Defendants in the Underlying Lawsuit and that AGCIC has no duty to defend and no duty to indemnify the Underlying Defendants for those claims;

2. Declaring that AGCIC is not responsible for any attorney fees or costs of suit in defending the Underlying Lawsuit;

3. Declaring that AGCIC is not responsible for any judgment or settlement in the Underlying Lawsuit;

4. Awarding AGCIC costs of this action; and

5. Granting AGCIC such other and further relief as the court deems just and proper.

NOTE:  PLAINTIFF DEMANDS JURY TRIAL.

Respectfully submitted,

**FOLEY & MANSFIELD, P.L.L.P.**

By /s/ *C. Raymond Bell*_____
C. Raymond Bell, #39605
rbell@foleymansfield.com
Jeremy T. Staley, #66254
jstaley@foleymansfield.com
101 South Hanley Rd., Ste. 600
St. Louis, Missouri  63105
(314) 925-5710
(314) 925-5701 (fax)


Attorneys for Plaintiff,
Argonaut Great Central Insurance Company