# IN THE UNITED STATES DISTRICT
# FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| ARGONAUT GREAT CENTRAL INSURANCE COMPANY, <br><br> Plaintiff, <br><br> vs. <br><br> LINCOLN COUNTY, MISSOURI, SERGEANT RYAN J. McCARRICK, DETECTIVE MICHAEL MERKEL, DETECTIVE PATRICK HARNEY, PROSECUTING ATTORNEY LEAH ASKEY, and RUSSELL SCOTT FARIA, <br><br> Defendants. | Cause No.: 4:17-cv-762 JAR |

**PLAINTIFF'S REPLY TO LINCOLN COUNTY DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

COMES NOW Plaintiff, Argonaut Great Central Insurance Company ("AGCIC"), by its attorneys, Foley & Mansfield, P.L.L.P., pursuant to Rule 56 of the Federal Rules of Civil Procedure, the Local Rules of this District Court, and this Court's Case Management Order, and for its Reply to Defendants Ryan McCarrick, Patrick Harney, Leah Askey, and Lincoln County's (the "Lincoln County Defendants") Memorandum In Opposition to AGCIC's Motion for Summary Judgment, states as follows:

## INTRODUCTION

AGCIC filed a motion for summary judgment (Docs. 75, 76, 77) on the grounds that there is no possibility of insurance coverage for underlying defendants Lincoln County, Ryan McCarrick, Michael Merkel, Patrick Harney, and Leah Askey ("Underlying Defendants") arising from an underlying lawsuit filed by underlying plaintiff Russell Faria. In response, the Lincoln County Defendants filed a memorandum in opposition (Doc. 89) contending that the AGCIC insurance policies ("Policies") provide coverage or, at the very least, there is a possibility of such coverage.

For the reasons stated below, as well as for the reasons already stated in AGCIC's Memorandum of Law in support of its Motion for Summary Judgment, AGCIC has demonstrated, as a matter of law, that there is no possibility of coverage because either (1) the wrongful acts at issue occurred prior to the AGCIC policy period, (2) the conduct triggers a policy exclusion for dishonest, malicious, fraudulent or criminal act, error or omission or knowing violation of the law, (3) the Policies exclude intentionally wrongful and/or reckless conduct, (4) the Policies are excess over underlying insurance from another insurer, or (5) the insureds are immune from the claims made by the Faria Complaint, thereby precluding coverage.

## NO FACTS ARE IN DISPUTE

There is no dispute as to any of the facts presented in AGCIC's Motion for Summary Judgment. The Lincoln County Defendants did not deny any of AGCIC's statement of facts. Nor did the Lincoln County Defendants submit a statement of additional facts in dispute.

## ARGUMENT

I. THE ALLEGED WRONGFUL ACTS COMPRISE A SINGLE WRONGFUL ACT THAT OCCURRED PRIOR TO THE POLICIES' COVERAGE PERIOD.

   1. *The Alleged Events Comprise a Single Wrongful Act.*

The Lincoln County Defendants admit that all related wrongful acts are treated as one under the Policies. (Doc. 74-1 PageID 1051) (**"this language requires all alleged "wrongful acts" to be treated as one.**"). The policy language is clear on this point, as is the Policies' definition of the term "wrongful act." (*see* Doc. 77 ¶ 4). Despite this, the Lincoln County Defendants argue that this cannot be what the Policies mean. They argue instead that, actually, the Policies' "wrongful act" definition is merely a limitation of AGCIC's coverage responsibility in the scenario where there are multiple claims and claimants. (*See* Doc. 89 PageID 1470). They further argue that it would be absurd to interpret the plain meaning of the policy language, because the definition of the term "wrongful act"

would supposedly allow AGCIC to combine "innocent" conduct with related wrongful conduct. This arguments are flawed on several grounds.

First, co-defendant Michael Merkel, who is similarly situated to the Lincoln County Defendants on the coverage issue, wholeheartedly rejects the Lincoln County Defendants' interpretation and has explained to this Court the following regarding the definition of "wrongful act" under the Policies:

> To assume that Government Defendants' initial conduct in 2011 was non-actionable conduct and that it can be combined with actionable conduct that occurred in 2012 is fatally flawed, because it would be contrary to the plain terms of the Single Act Provision itself and the clear, controlling precedents of Missouri insurance law.
>
> […] Accordingly, the plain language of the Single Act Provision provides that all related conduct that gives rise to "claims or claimants" shall be combined into only one single "wrongful act." It does not make sense to combine conduct that is not actionable with conduct that is to create a single "wrongful act." No reasonable person would agree to pay premiums to cover conduct that would never expose him or her to liability.

(Doc. 95 PageID 1581-1582). As their own co-defendant observes, the Lincoln County Defendants' interpretation of the Policies is flawed, unreasonable, and would render the definition of "wrongful act" meaningless.

Second, the Lincoln County Defendants essentially argue that the term "wrongful act" actually means a *non-wrongful* act (Doc. 89 PageID 1470)[1]. As a result, according to Defendants, any innocent police investigation that occurs prior to the start of coverage results in a forfeiture of that coverage if a related wrongful act later accrues during the policy's term. (*Id*. PageID 1468-1471). Defendants then conclude that this policy provision is absurd, unreasonable, and the basis for nonsensical hypotheticals. This tactic by Defendants should be rejected on its face, because it violates the requirement that the Policies be interpreted according to their plain and ordinary meaning. A wrongful act does not mean an innocent act. While AGCIC understands that the

---

[1] According to the defendants, "No part of the definition of 'wrongful act' requires that an act be wrongful in itself; it merely describes the type of event covered by the policy."

Defendants deny the allegations in the Faria Complaint, the coverage determination is made by comparing the language of the underlying allegations with the language of the policies. *See Custom Hardware Eng'g & Consulting, Inc. v. Assurance Co. of Am.*, 295 S.W.3d 557, 562 (Mo. Ct. App. 2009).

As was set out in extensive detail in AGCIC's Memorandum in Support of its Motion for Summary Judgment, the Faria Complaint extensively alleges acts that are logically, causally, and/or temporally related as an overarching theory that the Defendants improperly detained Faria, prematurely determined he was the murderer, administered a faux polygraph test, ignored exculpatory evidence, fabricated evidence, coached witnesses, and failed to pursue the true murderer, all in a conspiracy to obtain a guilty verdict at Faria's criminal trial. (*See* Doc. 76 PageID 1071-1074). This is not "innocent" conduct or a claim that the Lincoln County Defendants were simply doing their jobs. As a result, the Policies collapse this related conduct into a single wrongful act.

2. *The Single Wrongful Act Was First Committed Prior to the AGCIC Policy Period.*

Under the plain language of the Policies, a wrongful act is not covered unless that act was first committed during the policy period. (Doc. 77 ¶ 6). However, the Lincoln County Defendants argue that because the Policies do not define the term "committed," the Court cannot make a determination as to when a wrongful act was "first committed." This strategy is unpersuasive.

According to Defendants, the term "first committed" should be ignored because the Policies actually mean "first completed." (*See* Doc. 89 PageID 1471-1472). Therefore an act is not "committed" under the Policies until it is fully completed, according to Defendants. The fact that Defendants require the Court to rewrite or interline the language of the Policies is in itself grounds to reject their argument. But even if the Court were to accept Defendants' premise, the wrongful acts at issue were still completed in 2011, which AGCIC has identified in detail in its Memorandum of Law in Support of its Motion for Summary Judgment. (*See* Doc. 76 PageID 1072).

Defendants further posit that a wrongful act does not occur until criminal charges have been filed. (Doc. 89 PageID 1465-1466) (citing *City of Lee's Summit v. Mo. Pub. Entity Risk Mgmt.*, 390 S.W.3d 214, 219 (Mo.App. W.D. 2012); *Am. Family Mut. Ins. Co. v. McMullin*, 869 S.W.2d 862, 864 (Mo. Ct. App. 1994)). In *Lee's Summit*, the only claims at issue were two claims submitted to the jury asserting violations of the right to a fair trial. *Lee's Summit*, 390 S.W.3d at 219. The jury reached a verdict that, had disputed evidence been disclosed to the accused, the result of the proceeding would have been different. *Id*. at 217. The question at issue was whether there was an "occurrence" within the MOPERM policy period. The court examined the policy's specific definition of the term "occurrence."[2] The court's analysis was limited to the specific language of that particular insurance policy. For example, the *Lee's Summit* policy did not contain a "first committed" provision or define the term "wrongful act." Because the *Lee's Summit* policy was silent on the question of *when* the occurrence occurred, the court applied the general rule that the time of an occurrence is *not* when the wrongful act is committed but when the complaining party is damaged. *Id*. at 220.

In the *McMullin* case cited by Defendants, the insurance policies at issue were (1) a homeowner's policy and (2) a personal umbrella policy. *McMullin*, 869 S.W.2d 862, 863. That case did not involve a law enforcement liability policy or a dispute over the meaning of the term "wrongful act." *Id*. (noting "Missouri has not addressed the application of these general rules in the context of a malicious prosecution action."). Similarly, the *Hampton* case cited by Defendants did

---

[2] In that policy, The Memorandum of Coverage defined "occurrence" as:
> as respects COVERAGES C and D means an act, accident, event, during the coverage period that results in injury or damages; as respects COVERAGES A, B, C and D all injuries or damages arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one occurrence.

*City of Lee's Summit*, 390 S.W.3d at 218.

not involve a law enforcement liability policy or a dispute over the meaning of the term "wrongful act." *Hampton v. Carter Enterprises, Inc.*, 238 S.W.3d 170 (Mo. Ct. App. 2007).

The *Lee's Summit* and *McMullin* courts cited and relied upon *Kirchner v. Hartford Acc. & Indem. Co.*, 440 S.W.2d 751, 756 (Mo.App.1969). But *Kirchner* is a factually inapposite case, as the Eighth Circuit has noted:

> *Kirchner* involved an entirely different coverage claim. In that case, a contractor working on a building went home for the weekend. A storm struck Sunday night, the structure collapsed, and the contractor was sued for negligence contributing to the collapse. The court held that the "care, custody or control" exclusion did not apply because the contractor was absent when the building collapsed, even if his prior negligence contributed to the collapse. In *Kirchner*, the court simply ruled that the "occurrence" causing property damage was the storm, not any prior negligence by the contractor."

*Michigan Millers Mut. Ins. Co. v. DG & G Co.*, 569 F.3d 807, 811 (8th Cir. 2009) (internal citations omitted).

Of course, the instant litigation involves an insurance policy which affirmatively identifies when a wrongful act takes place: the date the act is first committed. *See Bowan ex rel. Bowan v. Gen. Sec. Indemn. Co. of Arizona*, 174 S.W.3d 1, 5 (Mo. Ct. App. 2005) ("we find definitions in an insurance policy to be controlling as to the terms used within the policy"). Insurance policies, as contracts, are to be enforced as written, which expresses the intent of the parties. *Blair By Snider v. Perry Cty. Mut. Ins. Co.,* 118 S.W.3d 605, 606 (Mo. 2003)*; Lueckenotte v. Lueckenotte*, 34 S.W.3d 387, 395 (Mo. banc 2001)). Yet Defendants argue that the Court should completely ignore the Policies' own terms and apply a new standard: that any wrongful act occurs when criminal charges are filed. Additionally, the term "occurrence" is not a term at issue in instant matter, unlike in *Lee's Summit* where that term was the focus. Defendants' cited case law does not affect the validity or interpretation of the AGCIC Policies.

Furthermore, Defendants' interpretation of the Policies creates an irreconcilable conflict whenever the date that a wrongful act is *completed* differs from the date that criminal charges are

*filed*.  To further highlight the confusion, this interpretation flies in the face of Defendants' earlier contention that, actually, Missouri law "**establishes without doubt** that the coverage trigger for a civil rights claim under an 'occurrence' liability policy is the date of the defendant's **arrest**."  (Doc. 74-1 PageID 1053).  This is just one way in which Defendants fail in their attempt to rewrite or undermine the plain language of the Policies.

The Lincoln County Defendants admit that, in regards to Count I of the Faria Complaint, "Argonaut would have no responsibility to defend or indemnify, because that alleged deprivation did not occur during the policy's term."  (Doc. 89 PageID 1470).  They dispute that the remaining counts have the same fate.

A reasonable expectation of any insured is that the policy means what the policy says.  Where a policy limits coverage and defines terms, those limitations and definitions are applied according to their plain and ordinary meaning.  When applying the clear language of the Policies, there is no coverage for the claims arising from the Faria Complaint because the wrongful acts comprise a single wrongful act that occurred prior to the policy period.  There is no possibility of coverage for the Lincoln County Defendants.

II.  THE POLICIES EXCLUDE LIABILITY FOR INTENTIONAL WRONGFUL CONDUCT AS WELL CONDUCT THAT IS MALICIOUS, CRIMINAL, OR A KNOWING VIOLATION OF THE LAW.

AGCIC established in its Motion for Summary Judgment that the Lincoln County Defendants' conduct is excluded from coverage because the Policies exclude liability for acts that are malicious, criminal, or knowing violations of the law.  (Doc. 76 PageID 1074-1075).  AGCIC further established that Missouri courts have held that liability policy clauses do not cover intentional, wanton, reckless, or willful acts.  (*See id*. PageID 1076) (*citing Easley v. Am. Family Mut. Ins. Co.*, 847 S.W.2d 811, 812 (Mo. Ct. App. 1992)).  As a result, the factual allegations of the Faria Complaint do not constitute a "wrongful act" under the Policies.

The Lincoln County Defendants respond that the Faria Complaint also includes additional allegations of incompetence, recklessness, and intent that fall short of the policy's disqualifying "intentional misconduct" provisions.  The result is that intentional misconduct allegations cannot be relied on to exclude coverage, according to Defendants.

Defendants cite two inapposite cases for the proposition that an insurer cannot exclude coverage based on intentional misconduct.  The first case, *Elcom Technologies*, was a Utah District Court decision applying Pennsylvania state law to insurance coverage for advertising liability. *Elcom Technologies v. Hartford Insurance Co.*, 991 F.Supp 1294, 1298 (D. Utah 1997).  The second case, *DecisionOne Corp.*, was a Eastern District of Pennsylvania District Court decision also applying Pennsylvania law in which the underlying complaint alleged that the insured made derogatory statements about the underlying plaintiff's products, thus stating a cause of action for "disparagement," which was covered as advertising injury by a separate part of the standard policy. *DecisionOne Corp. v. ITT Hartford Insurance Group*, 942 F.Supp. 1038, 1043 (E.D.Pa. 1996). Neither of these advertising liability cases offer any insight to the AGCIC policy or Missouri law, and neither case has authority in this matter.

In summary, the Faria Complaint alleges that the Lincoln County Defendants are liable for dishonest conduct, malicious acts, and knowing violations of the law.  Furthermore, the Defendants' alleged acts are not covered because they were intentional, wanton, reckless, or willful.  The AGCIC Policies preclude any possibility of coverage under the applicable exclusions for such conduct.

III.   THE MOPERM POLICY IS PRIMARY OVER THE AGCIC POLICIES.

The Law Enforcement Liability coverage part states that it is "excess over any other collectible insurance" and that AGCIC "will have no duty to defend the insured against any 'suit' or claim for 'damages' if any other insurer has a duty to defend the insured against that 'suit.'"  (Doc. 77-3 PageID 1295 ¶F).  Thus, if any other insurance policy provides coverage for the claims in the

Faria Complaint, then that other policy is primary and AGCIC has no duty to defend. (*See id.*).  The Missouri Public Entity Risk Management Fund ("MOPERM") is one such primary policy.

MOPERM provided insurance coverage to Lincoln County and its officers, officials, and employees pursuant to a liability insurance policy during the calendar year 2011. (*See* Doc. 89 PageID 1474-1475) (Doc. 77-9). The MOPERM policy collapses injuries from continuous or repeated exposure to similar conditions to be treated as a single occurrence, and that policy measures an occurrence at the time it begins. (*See* Doc. 76 PageID 1075-1076).  The MOPERM policy also defines the term "Personal Injury" to include "false arrest, malicious prosecution, or willful detention" and "violation of federal civil rights laws."  (Doc. 77-9 PageID 1331).

Defendants suggest that this portion of AGCIC's motion should be disregarded because AGCIC has failed to join MOPERM as a necessary and indispensable party.  This argument fails under Rule 12(b) of the Federal Rules of Civil Procedure, which requires that a motion asserting the failure to join a party must be made before pleading, unless the raised as an affirmative defense.  Fed. R. Civ. P. 12(b)(7).  Defendants never filed such a motion nor asserted non-joinder as an affirmative defense.  (*See* Doc. 44, Doc. 72).

Defendants further argue that the MOPERM policy's definition of the term "occurrence" precludes coverage because under that policy: (a) the occurrence must cause injury, and Defendants 2011 conduct did not cause Faria's wrongful conviction in 2013, and (b) only covers negligent acts, thereby excluding civil rights claims.  This argument does not withstand scrutiny and undermines Defendants' prior argument that coverage for civil rights liability cannot be limited to negligence claims.  (*See* Doc. 89 PageID 1475).[3]  First, the MOPERM policy defines the term "Personal Injury" to include "false arrest, malicious prosecution, or willful detention" and "violation of federal civil rights laws."  (Doc. 77-9 PageID 1331).  Second, the Faria Complaint explicitly alleges, for example,

---

[3] Defendants repeatedly assert that "civil rights claims do not sound in negligence."  If true, then they cannot argue that MOPERM's coverage of civil rights violations is lim8ited to negligence claims.

that his unlawful seizure in 2011 "would have had a reasonable likelihood of affecting the incarceration of Mr. Faria *and/or the outcome of the case*." (Doc. 56-1 ¶ 423) (emphasis added).

The wrongful conduct alleged in the Faria Complaint first occurred on December 28, 2011, which was during MOPERM's 2011 coverage period. (Doc. 56-1 ¶¶ 149-174, 198, 414-426, 449, 451, 460-462, 465-471, 486-490). The Faria Complaint alleges continuous, intermittent and/or repeated exposure to conditions that commenced during December 28, 2011 (i.e. MOPERM's 2011 coverage period). (*See* Doc. 76 PageID 1075-1076). The evidence demonstrates that Faria's allegations comprise an occurrence covered under the MOPERM policy. Because MOPERM has a duty to cover the Faria occurrence and to defend the Faria suit, there is no possibility that AGCIC's Law Enforcement Liability coverage part provides primary coverage, and AGCIC has no duty to defend the Lincoln County Defendants.

IV. THE POLICIES' OTHER COVERAGE PARTS ARE NOT APPLICABLE TO THE EVENTS ALLEGED IN THE FARIA COMPLAINT.

The Lincoln County Defendants do not contest that neither the Public Officials' Liability, Commercial General Liability, nor Commercial Excess Liability coverage parts apply to the allegations in the Faria Complaint. To the extent that the Defendants' memorandum in opposition is interpreted to assert that those coverage parts do apply, AGCIC adopts and incorporates herein its relevant argument in its Memorandum in Opposition to the Lincoln County Defendants Motion for Judgment on the Pleadings (Doc. 91 PageID 1494-1945).

V. THE POLICIES DO NOT COVER OR WAIVE GOVERNMENTAL IMMUNITY.

The Lincoln County Defendants do not contend that the Policies' Sovereign Immunity Non-Waiver Endorsement is vague, ambiguous, or otherwise invalid. Instead, Defendants argue that sovereign immunity only applies to negligence cases, and that sovereign immunity cannot be applied to a Section 1983 claim. These arguments as well as the case law cited by Defendants do not result

in coverage for claims for which the Defendants are immune.  To the extent immunity protects the Defendants, there is no possibility of coverage for them.

## CONCLUSION

As a matter of law, there is no possibility that the Lincoln County Defendants are covered for the claims made in the underlying Faria Complaint.  The Lincoln County Defendants' allegedly wrongful conduct constitutes a single act which occurred prior to the AGCIC policy period.  The AGCIC Policies exclude liability for the Lincoln County Defendants' acts that were malicious, criminal, or knowing violations of the law, and intentional, reckless, or immune conduct is not covered by the Policies.  Additionally, AGCIC's Policies are excess over pre-existing coverage.  For these reasons, there is no genuine issue of material fact that AGCIC is entitled to summary judgment.

Respectfully submitted,

**FOLEY & MANSFIELD, P.L.L.P.**

By _____*/s/ Jeremy T. Staley*_____
C. Raymond Bell, #39605
rbell@foleymansfield.com
Jeremy T. Staley, #66254
jstaley@foleymansfield.com
101 South Hanley Rd., Ste. 600
St. Louis, Missouri  63105
(314) 925-5710
(314) 925-5701 (fax)
Attorneys for Plaintiff
Argonaut Great Central Insurance Company

## **CERTIFICATE OF SERVICE**

      The undersigned certifies that on April 19, 2018 a true and accurate copy of the foregoing document was filed with the United States District Court for the Eastern District of Missouri by way of the Court's CM/ECF system which sent notification to all parties entitled to service.

                                                  */s/ Jeremy T. Staley*