

# MEMORANDUM OF COVERAGE DECLARATIONS

This Declaration cancels and replaces any previous ones issued:  Reissued effective 1-1-2011

| MEMBER NAME AND MAILING ADDRESS<br><br>COUNTY OF LINCOLN<br>201 MAIN ST<br>TROY MO  63379 | AGENCY & MAILING ADRESS |
|---|---|
| Memorandum Number: 2032 | Coverage Period:   12:01 a.m. 1-1-2011 to 12:01 a.m. 1-1-2012 |
| Policy Number:   LP-2032-201101 | |

| COVERAGE | DEDUCTIBLE | RETROACTIVE DATE |
|---|---|---|
| **The limit for the coverages listed below shall not exceed the maximum amount provided for by RSMo.537.610 (Sovereign Immunity Limits) or $2,000,000 per occurrence as set forth in Section II of the Memorandum of Coverage.** | | |
| Automobile Liability | $1,000 | |
|    Hired and Non-Owned Vehicles | $1,000 | |
| General Liability | $0 | |
| Employment Practices Liability | $0 | |
| Errors & Omissions Liability | $0 | |
| Law Enforcement Liability | $0 | |

*Deductible applies to Loss and Loss Adjustment Expense combined if indicated on the Declarations M100 (Ed. 1-11). Loss Adjustment Expense is defined as all costs of investigating, adjusting, and defending a claim.

| COVERAGE | DEDUCTIBLE | LIMIT |
|---|---|---|
| Uninsured Motorist | $0 | $50,000 |
| Auto Physical Damage | Per Schedule | Actual Cash Value unless Agreed Value listed |

| Forms and endorsements contained in the Memorandum at inception: | |
|---|---|
| Deductible Liability Coverage | M300 (Ed. 1-00) |
| Schedule of Automobiles | M400 (Ed. 1-11) |
| Automobile Physical Damage Coverage | M401 (Ed. 1-00) |
| Uninsured Motorist Coverage | M402 (Ed. 1-10) |
| Automobile Fleet Automatic | M405 (Ed. 1-07) |
| Additional Covered Party - Lessor and Loss Payee Automobiles | M600 (Ed. 1-00) |
| Additional Covered Party - Comprehensive General and Automobile Liability | M601 (Ed. 1-00) |

Issued by Missouri Public Entity Risk Management Fund (MOPERM), P.O. Box 7110, Jefferson City, MO 65102



EXHIBIT
A

By: _Dale Karmer_          Date: 2-10-2011

M100(Ed.1-11)

**DEDUCTIBLE LIABILITY COVERAGE**

1. **MOPERM'S** obligation to pay damages on behalf of the **Covered Party** because of damages sustained by one or more persons or organizations as a result of any one **occurrence**, applies only to the amount of damages payable in excess of the deductible stated on the Declarations Page.

2. **MOPERM** may pay part or all of the deductible amount to effect settlement of any claim and, upon notification of the action taken, the **Member Agency** shall promptly reimburse **MOPERM** for such part of the deductible amount as has been paid by **MOPERM**.

3. The terms of the Memorandum of which this endorsement forms a part including those with respect to (a) **MOPERM'S** rights and duty to defend any claim or suit seeking such damages, and (b) the **Covered Party's** duties in the event of an **occurrence**, claim or suit, apply regardless of the application of the deductible amount.

(Deductible does not apply to Uninsured Motorists and Automobile Medical Payments coverages.)

Issued by Missouri Public Entity Risk Management Fund (MOPERM), P. O. Box 7110, Jefferson City, MO 65102.

M300(Ed. 1-00)

## AUTOMOBILE PHYSICAL DAMAGE COVERAGE

A. **MOPERM** will pay for loss to a covered **automobile** or its equipment under:

1.  Comprehensive Coverage. From any cause except the covered **automobile's** collision with another object or its overturn.

2.  Collision Coverage. Caused by the covered **automobile's** collision with another object or its overturn.

B. **MOPERM** WILL NOT COVER (EXCLUSIONS).
    This memorandum does not apply to:

1.  Wear and tear, freezing, mechanical or electrical breakdown unless caused by other loss covered by this memorandum.

2.  Blowouts, punctures or other road damage to tires unless caused by other loss covered by this memorandum.

3.  Loss caused by declared or undeclared war or insurrection or any of their consequences.

4.  Loss caused by the explosion of a nuclear weapon or its consequences.

5.  Loss caused by radioactive contamination.

6.  Loss to tape decks or other sound reproducing equipment not permanently installed in a covered automobile.

7.  Loss to tapes, records or other sound reproducing devices designed for use with sound reproducing equipment.

8.  Loss to any sound receiving equipment designed for use as a citizens' band radio, two-way mobile radio or telephone or scanning monitor receiver, including its antennas and other accessories, unless permanently installed in the dash or console opening normally used by the automobile manufacturer for the installation of a radio.

C. HOW **MOPERM** WILL PAY FOR LOSSES - THE MOST **MOPERM** WILL PAY.

1.  At **MOPERM's** option, **MOPERM** may:

    a.  Pay for, repair or replace damaged or stolen property; or

    b.  Return the stolen property, at **MOPERM's** expense. **MOPERM** will pay for any damage that results to the **automobile** from the theft.

2.  The most **MOPERM** will pay for loss is the smaller of the following amounts:

    a.  The actual cash value of the damaged or stolen property at the time of loss; or

    b.  The cost of repairing or replacing the damaged or stolen property with other of like kind or quality.

3.  For each covered **automobile**, **MOPERM's** obligation to pay for repair, return or replace damaged or stolen property will be reduced by the applicable deductible shown in the Schedule of Covered Automobiles.

D.  LOSS PAYABLE CLAUSE.

1.  **MOPERM** will pay the **Member Agency** and the loss payee named in the policy for loss to a covered **automobile**, as their interest may appear.

2.  The coverage includes the interest of the loss payee unless the loss results from fraudulent acts or omissions on the **Member Agency's** part.

3.  **MOPERM** may cancel the coverage as allowed by Withdrawal/Cancellation. Cancellation ends this agreement as to the loss payee's interest. If **MOPERM** cancels the coverage **MOPERM** will mail the **Member Agency** and the loss payee the same advance notice.

4.  If **MOPERM** makes any payment to the loss payee, **MOPERM** will obtain his rights against any other party.

5.  If **MOPERM** makes any payment to the loss payee, **MOPERM** will obtain his rights against any other party.

E.  GLASS BREAKAGE - HITTING A BIRD OR ANIMAL - FALLING OBJECTS OR MISSILES.

**MOPERM** will pay for glass breakage, loss caused by hitting a bird or animal or by falling objects or missiles under Comprehensive Coverage if the **Member Agency** carries Comprehensive Coverage for the damaged **automobile**. However, the **Member Agency** has the option of having glass breakage caused by a covered **automobile's** collision or overturn considered a loss under Collision Coverage.

F.  TO RECOVER FOR LOSS TO A COVERED **AUTOMOBILE** OR ITS EQUIPMENT, THE **MEMBER AGENCY** MUST DO THE FOLLOWING:

1.  Permit **MOPERM** to inspect and appraise the damaged property before its repair or disposition.

2.  Do what is reasonably necessary after **loss** at **MOPERM's** expense to protect the covered **automobile** from further **loss**.

3.  Submit a proof of **loss** when required by **MOPERM**.

4.  Promptly notify the police if the covered **automobile** or any of its equipment is stolen.

G.  **MOPERM's** RIGHT TO RECOVER FROM OTHERS.

If **MOPERM** makes any payment, **MOPERM** is entitled to recover what **MOPERM** paid from other parties. Any person to or for whom **MOPERM** makes payment must transfer to **MOPERM** his or her rights of recovery against any other party. This person must do everything necessary to secure these rights and must do nothing that would jeopardize them.

H.  NO BENEFIT TO BAILEE - PHYSICAL DAMAGE INSURANCE ONLY.

**MOPERM** will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provisions of this Memorandum.

I.   APPRAISAL FOR PHYSICAL DAMAGE LOSSES.

1.   If the **Member Agency** and **MOPERM** fail to agree as to the amount of **loss**, either may demand an appraisal of the **loss**. In such event, the **Member Agency** and **MOPERM** shall each select a competent appraiser, and the appraisers shall select a competent and disinterested umpire. The appraisers shall state separately the actual cash value and the amount of **loss**, and, failing to agree, shall submit their differences to the umpire. An award in writing of any two shall determine the amount of **loss**. The **Member Agency** and **MOPERM** shall each pay their chosen appraiser and shall bear equally the other expenses of the appraisal and umpire.

2.   **MOPERM** shall not be held to have waived any of its rights by any act relating to appraisal.

Issued by Missouri Public Entity Risk Management Fund (MOPERM), P. O. Box 7110, Jefferson City, MO 65102.

M401(Ed. 1-00)

# UNINSURED MOTORIST COVERAGE

A. WORDS AND PHRASES WITH SPECIAL MEANING

In addition to the WORDS AND PHRASES WITH SPECIAL MEANING in the Memorandum, the following words and phrases have special meaning for UNINSURED MOTORISTS COVERAGE:

1. "Occupying" means in, upon, getting in, on, out or off.

2. "Uninsured motor vehicle" means a land motor vehicle.

   a. For which there is no applicable liability bond or policy at the time of an **accident,** or

   b. For which an insuring or bonding company denies coverage or is or becomes insolvent and is not covered by an insurance guaranty association, or

   c. Which is a hit-and-run vehicle which causes **bodily injury** to a **Covered Party** without hitting the **Covered Party,** a covered **automobile** or a vehicle the **Covered Party** is **occupying**. If there is no physical contact with the hit-and-run vehicle, the facts of the accident must be proved.  **MOPERM** may request supporting evidence other than the testimony of a person making a claim under this or any similar coverage to support the validity of such a claim.

However, **"uninsured motor vehicle"** does not include any vehicle:

   a. Owned or operated by a self-insurer under any applicable motor vehicle law.

   b. Owned by a government unit or agency.

   c. Designed for use mainly off public roads while not on public roads.

B. **MOPERM** WILL PAY

1. Subject to Section E, **MOPERM** will pay all sums the **Covered Party** is legally entitled to recover as damages from the owner or driver of an uninsured motor vehicle.  The damages must result from **bodily injury** sustained by the **Covered Party** caused by an accident. The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the **uninsured motor vehicle**.

C. **MOPERM** WILL NOT COVER - EXCLUSIONS

This coverage does not apply to:

1. Any claim settled without MOPERM's consent.

M402(Ed. 1-10)

2. Anyone using a vehicle without a reasonable belief that the person is entitled to do so.

D.  WHO IS COVERED

1.  Anyone occupying a covered automobile or a temporary substitute for a covered automobile. The covered automobile must be out of service because of its breakdown, repair, servicing, loss or destruction.

2.  Anyone for damages he is entitled to recover because of **bodily injury** sustained by another **Covered Party**.

E.  **MOPERM'S** LIMIT OF LIABILITY

1.  Regardless of the number of **Covered Parties**, claims made or vehicles involved in the accident, the most **MOPERM** will pay for all damages resulting from any one accident is the limit of UNINSURED MOTORISTS COVERAGE shown in the Schedule of Covered Automobiles.

    The Limit of Liability shown in the Schedule for this coverage is also the most **MOPERM** will pay regardless of the number of covered automobiles.

2.  The Limit of Liability under this uninsured motorist coverage shall be reduced by all sums paid by or for anyone who is legally responsible, including all sums paid under the Memorandum's LIABILITY COVERAGE.

3.  Any amount paid under this coverage will reduce any amount a Covered Party may be paid under the policy's LIABILITY COVERAGE.

F.  CHANGES IN CONDITIONS

The CONDITIONS of the Memorandum are changed for UNINSURED MOTORISTS COVERAGE as follows:

1.  The reference in OTHER COVERAGE to other "collectible coverage" applies only to other collectible uninsured motorists coverage.

2.  MOPERM'S RIGHT TO RECOVER FROM OTHERS is changed by adding the following:

    If  MOPERM makes a payment under this uninsured motorist coverage and the **Covered Party** recovers from another party, the **Covered Party** shall hold the proceeds in trust for **MOPERM** and pay **MOPERM** back the amount received by the **Covered Party** but not to exceed the amount **MOPERM** has paid under this coverage.

G.  ARBITRATION

The Covered Party shall not be required to arbitrate disputed claims.

Issued by Missouri Public Entity Risk Management Fund (MOPERM), P. O. Box 7110, Jefferson City, MO 65102.

M402(Ed. 1-10)

## AUTOMOBILE FLEET AUTOMATIC

Coverage is automatically extended to newly acquired or leased vehicles provided the Member Agency complies with the requirement of submitting to the Fund all changes to the Schedule of Covered Automobiles as they occur during the term of the Memorandum of Coverage.

The Member Agency is responsible for submitting changes within 30 days of the purchase, lease, or sale of vehicles. The Schedule of Covered Automobiles will be revised accordingly, and the appropriate adjustments will be made to the contribution on a monthly basis.

Issued by Missouri Public Entity Risk Management Fund (MOPERM), P. O. Box 7110, Jefferson City, MO 65102.

M405(Ed. 1-07)

## ADDITIONAL COVERED PARTY - LESSOR AND LOSS PAYEE
## AUTOMOBILE

A.  PHRASE WITH SPECIAL MEANING

In addition to the WORDS AND PHRASES WITH SPECIAL MEANING in the memorandum, the following phrase has special meaning in this endorsement.

**"Leased automobile"** means an **automobile** leased to the **Member Agency** under a leasing agreement of one year or more, including any substitute or replacement, for which the leasing agreement requires the **Member Agency** to provide direct primary insurance for the lessor.

B.  For a covered **automobile** which is a **leased automobile,** WHO IS A COVERED PARTY is changed to include as a Covered Party the lessor named in this endorsement. However, the lessor is a **Covered Party** only for **bodily injury** or **property damage** resulting from the acts or omissions of:

1.  The **Member Agency.**

2.  Any of the **Member Agency's** employees, officials, authorized volunteers or other agents.

3.  Any person, except the lessor or any employee or agent of the lessor, operating a **leased automobile** with the permission of any of the above.

C.  If **MOPERM** cancels the policy, **MOPERM** will endeavor to mail written notice to the additional covered party in accordance with the WITHDRAWAL/CANCELLATION condition in the Memorandum of Coverage.

D.  Cancellation ends this agreement.

E.  The lessor is not liable for payment of the **Member Agency's** contributions.

F.  LOSS PAYABLE CLAUSE

1.  **MOPERM** will pay the **Member Agency** and the lessor named in this endorsement for loss to a **leased automobile,** as their interest may appear.

2.  The coverage includes the interest of the lessor unless the loss results from fraudulent acts or omissions on the **Member Agency's** part.

3.  If **MOPERM** makes any payment to the lessor, **MOPERM** will obtain his rights against any other party.

### SEE ATTACHED STATEMENT OF COVERAGE

Issued by Missouri Public Entity Risk Management Fund (MOPERM), P. O. Box 7110, Jefferson City, MO 65102.

M600(Ed. 1-00)

## ADDITIONAL COVERED PARTY
## COMPREHENSIVE GENERAL AND AUTOMOBILE LIABILITY

It is agreed that the "Who is a Covered Party" provision includes as a **Covered Party** the person or organization named on the Statement(s) of Coverage attached to and made a part of this Memorandum, to whom or to which the **Member Agency** is obligated by virtue of a written contract to provide coverage as is afforded by this agreement, but only with respect to operations performed by or on behalf of the **Member Agency** or facilities used by the **Member Agency**.

### SEE ATTACHED STATEMENT OF COVERAGE

Issued by Missouri Public Entity Risk Management Fund (MOPERM), P. O. Box 7110, Jefferson City, MO 65102.

M601(Ed. 1-00)



**MISSOURI PUBLIC ENTITY RISK MANAGEMENT FUND**

# MEMORANDUM
# OF
# COVERAGE

**CONTENTS**

I.    WHAT MOPERM PAYS.......................................................................................................1

II.   MOPERM'S LIMIT OF LIABILITY ...................................................................................1

III.  WHO IS A COVERED PARTY...........................................................................................2

IV.   WHAT MOPERM WILL NOT COVER (EXCLUSIONS) ................................................2

V.    WORDS AND PHRASES WITH SPECIAL MEANING...................................................5

VI.   CONDITIONS......................................................................................................................6

MISSOURI PUBLIC ENTITY RISK MANAGEMENT FUND

**MEMORANDUM OF COVERAGE**

I.  **WHAT MOPERM PAYS**

A.  **COVERAGE**

1.  **Coverage for the Member Agency for claims on causes of action established by Missouri Law.**  For claims on causes of action established by Missouri Law, **MOPERM** will pay on behalf of the **Member Agency** the **ultimate net loss** which the **Member Agency** shall become legally obligated to pay by reason of liability arising out of:

a.  Injuries directly resulting from the negligent acts or omissions by public employees arising out of the operation of motorized vehicles within the course of their employment;

b.  Injuries caused by the condition of a public entity's property if the plaintiff establishes that the property was in dangerous condition at the time of the injury, that the injury directly resulted from the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of harm of the kind of injury which was incurred, and that either a negligent or wrongful act or omission of an employee of the public entity within the course of his employment created the dangerous condition or a public entity had actual or constructive notice of the dangerous condition in sufficient time prior to the injury to have taken measures to protect against the dangerous condition, as more fully set forth in Section 537.600(2) of the Missouri statutes.

2.  **Coverage for Member Agency for claims on causes of action other than those established by Missouri Law; and coverage for public officials and employees.** For claims against the **Member Agency** on causes of action other than those established by Missouri Law and for claims against public officials and employees, **MOPERM** will pay the **ultimate net loss** which the **Covered Party** shall become legally obligated to pay by reason of liability for damages because of:

COVERAGE A - BODILY INJURY LIABILITY
COVERAGE B - PROPERTY DAMAGE LIABILITY
COVERAGE C - PUBLIC OFFICIALS ERRORS AND OMISSIONS LIABILITY
COVERAGE D - PERSONAL INJURY LIABILITY

to which this memorandum applies, caused by or arising out of an **occurrence.**

B.  **DEFENSE**

On matters covered by this memorandum, **MOPERM** shall have the right and duty to defend any suit against the **Covered Party**, even if any allegations are groundless, false or fraudulent. **MOPERM** may make such investigation, negotiation or settlement of any claim or suit as it deems expedient. **MOPERM** shall not be obligated to pay any claim or judgment or to defend any suit after **MOPERM's** limit of liability has been exhausted.

Nothing contained in this section, or the balance of this document, shall be construed to broaden the liability of the **Member Agency** beyond the provisions of sections 537.600 to 537.610 of the Missouri statutes, nor to abolish or waive any defense at law which might otherwise be available to the **Member Agency** or its officers and employees.

II.  **MOPERM'S LIMIT OF LIABILITY**

Regardless of the number of (1) **covered parties** under the memorandum, (2) persons or organizations who sustain injury or damage, or (3) claims made or suits brought, **MOPERM's** liability for the **ultimate net loss** under Section 1. A. 1. shall not exceed the maximum amount provided for by RSMo. Section 537.610 when the cause of action accrued and, under Section 1. A. 2. shall not exceed $2,000,000 for any one **occurrence** arising out of **bodily injury, property damage, public officials errors and omissions,** or **personal injury** or any combination thereof.

M 900 (Rev. 1-11)

While a covered automobile is away from the state where it is licensed, **MOPERM** will provide the minimum amounts and types of other coverages, such as "No-Fault," required of out-of-state vehicles by the jurisdiction where the **automobile** is being used.  **MOPERM** will not pay anyone more than once for the same elements of loss because of this extension but in no event to exceed the maximum amount provided for in RSMo. Section 537.610 for any one **occurrence**.

III.  **WHO IS A COVERED PARTY?**

Each of the following is a **Covered Party,** to the extent set forth below:

A.  The **Member Agency** named in the declarations.

B.  Any **elected** or **appointed official** of the **Member Agency** while acting within the course and scope of their duties.

C.  Any member of **Boards** or **Commissions** of the **Member Agency** while acting within the course and scope of their duties.

D.  Any **employee** or **authorized volunteer** of the **Member Agency** while acting within the course and scope of their duties.

E.  Any person while **using** an **owned, non-owned** or **hired automobile** and any person legally responsible for the **use** thereof, provided the actual **use** of the **automobile** is within the course of employment.  The coverage extended by this Section E shall not apply:

　　1.  To any person or organization, or to any agent or employee thereof, engaged in selling, repairing, servicing, delivering, testing, road testing, parking or storing **automobiles,** with respect to any **occurrence** arising out of any such occupation; or

　　2.  With respect to any **hired automobiles,** to the owner or a lessee thereof other than the **Member Agency,** or to any agent or employee of such owner or lessee.

F.  Any person or organization to whom or to which the **Member Agency** is obligated by virtue of a written contract to provide coverage such as is afforded by this agreement but only with respect to operations performed by or on behalf of the **Member Agency** or facilities owned or used by the **Member Agency.**

IV.  **WHAT MOPERM WILL NOT COVER (EXCLUSIONS)**

This memorandum does **not** apply:

A.  To liability arising out of the ownership, maintenance, use or operation of any **airfield** or similar aviation facility.

B.  To liability arising out of the ownership, maintenance, loading, unloading, use, or entrustment to others of owned, non-owned or hired **aircraft.**

C.  To liability arising out of the ownership, maintenance, loading, unloading, use, or entrustment to others of owned, non-owned or hired **watercraft.**

　　1.  Any **watercraft** owned or operated by or rented or loaned to any **Covered Party;**

　　2.  Any other **watercraft** operated by any person in the course of his employment by any **Covered Party;**

　　but this exclusion does not apply to **watercraft** while ashore on premises owned by, rented to or controlled by the **Covered Party** nor to **watercraft** under 26 feet in length.

D.  To any obligation for which the **Covered Party,** or any carrier as insurer therefor, may be held liable under any workers' compensation, unemployment compensation or disability benefits law or under any similar law.

E.  To liability for **bodily injury** to any employee, elected or appointed official, members of any Boards or Commissions, or authorized volunteer of the **Covered Party** in connection with his or her duties for the **Covered Party,** except with respect to liability of others assumed by the **Covered Party** under contract.

M 900 (Rev. 1-11)

F.  To liability of any **employee, elected** or **appointed official**, members of any **Boards** or **Commissions**, or **authorized volunteer** with respect to **bodily injury** of another **employee, elected** or **appointed official**, members of any **Boards** or **Commissions**, or **authorized volunteer**.

G.  To liability for **property damage** to:

  1.  Property owned or operated by the **Covered Party;**

  2.  Property rented to or leased to the **Covered Party** where the **Covered Party** has assumed liability under contract for damage to or destruction of such property, unless the **Covered Party** would have been liable in the absence of such contract;

  3.  **Aircraft** in the care, custody or control of the **Covered Party**; and

  4.  Property of others in the care, custody or control of the **Covered Party**.

H.  To any liability arising out of **pollution,** including but not limited to:

  1.  Investigation, settlement or defense of any threatened, actual or alleged claim, suit, damage or injury of any kind arising out of the actual, alleged or threatened discharge, exposure to, release or escape of pollutants anywhere in the world.

  2.  Loss, cost or expense arising out of any governmental direction or request that the **Covered Party** test for, monitor, clean up, remove, contain, treat, detoxify or neutralize the pollutants.

  3.  Any loss, cost or expense incurred by a governmental entity or other third party including the cost of investigation, monitoring and attorneys' fees, relating to activities in connection with efforts to test for, monitor, clean up, remove, contain, trace, detoxify or neutralize pollutants.

  Pollutants means any solid, liquid, gaseous or thermal contaminants, irritants or toxic substances including smoke, vapor, soot, fumes, acids, alkalis, air contaminants, minerals, metals, chemicals, waste and particulates including asbestos.  Waste includes materials to be recycled, reconditioned or reclaimed.

I.  To liability arising out of or in connection with the operation of a **hospital, clinic** or established **health care facility** owned or operated by a **Member Agency** due to:

  1.  The rendering of or failure to render:

    a.  Medical, surgical, dental, x-ray, nursing service or treatment, or the furnishing of food or beverages in connection therewith.

    b.  Any treatment or service conducive to health or of a professional nature.

    c.  Any cosmetic or tonsorial service or treatment.

  2.  The furnishing of or dispensing of drugs or medical, dental or surgical supplies or appliances.

  This exclusion shall not apply to ambulance service personnel or to registered nurses, licensed practical nurses or nurses' aides directly employed by the **Member Agency** as specifically designated in the declarations and while acting within the course and scope of their duties for said designated **Member Agency**.

J.  To claims against those who are independent contractors of the  **Member Agency**, its officers or employees.  However, this exclusion shall not apply to **Member Agencies** acting as independent contractors.

K.  To claims for loss or damage arising out of or in connection with the principles of eminent domain, proceedings to condemn property or inverse condemnation by whatever name regardless of whether such claims are made directly against the **Covered Party** or by virtue of any agreement entered into by or on behalf of the **Covered Party**; or any action, proceeding or challenge by whatever name to enforce or invalidate, modify or change any zoning ordinance or land use plan.

M 900 (Rev. 1-11)

L.   To past salary or wages due because of unlawful discrimination, violation of civil rights or wrongful termination.

M.   To punitive and exemplary damages, damages for aggravating circumstances, fines or penalties threatened or imposed for violation of any civil or criminal statute, administrative regulation or county or municipal ordinance.

N.   To all losses, including penalties, fines, attorneys' fees and expenses assessed and/or incurred, resulting from or arising out of charges that criminal statutes, the statutes of or Constitution of the State of Missouri or county or municipal ordinances were violated.

O.   To claims for fines, attorneys' fees and costs arising out of the enforcement provisions of Chapter 610, RSMo.

P.   To proceedings for removal or impeachment from office or any Board or Commission; or for the determination of qualifications for office or of election contests; or for professional disciplinary action brought by a person, board, commission or other person or entity empowered by law to do so.

Q.   Claims against any **Member Agency**, officer, employee, Board or Commission member of a **Member Agency** which were brought by or rendered in favor of that same **Member Agency** or officers, employees, Board or Commission members of that same **Member Agency,** acting in an official capacity.

R.   To injunctive relief or relief other than monetary damages.

S.   To claims or suits arising out of failure to effect or maintain proper insurance or bonds or to comply with the provisions of insurance contracts, policies or bonds.

T.   To all losses, including penalties, fines, attorneys' fees and expenses, resulting from or arising out of violations or claimed violations of the Fair Labor Standards Act or similar state statutes or local ordinances.

U.   Under coverage C, **Public Officials Errors and Omissions,** in addition to the foregoing exclusions, to:

    1.   **Bodily injury** or **personal injury.**

    2.   Physical injury to or loss of tangible and intangible property, including all damages as a result of loss of use of that property.

    3.   Damages resulting from the refunding, levying, collecting or disbursement of taxes, fees or assessments or the failure to refund, levy, collect or disburse any tax, fee or assessment.

    4.   Liability of a **Covered Party** (a) arising in whole or in part out of a **Covered Party's** obtaining remuneration or financial gain to which the **Covered Party** was not legally entitled or (b) arising out of the willful violation of the penal code or ordinance committed by or with the knowledge or consent of any **Covered Party.**

    5.   Liability arising out of any bidding process, estimates of probable cost or cost estimates being exceeded or faulty preparation of bid specifications or plans including engineering or architectural plans.

    6.   Failure to perform, breach of or arising out of any breach of a contractual obligation whether oral or in writing.

    7.   Liability imposed under the Employee Retirement Income Security Act of 1974 or any law mandatory thereof or any similar law or liability arising out of fiduciary activities as respects employee benefit plans.

    8.   Claims resulting from or arising out of the proposed or actual increase of utility rates.

V.   To liability:

    1.   With respect to which a **Covered Party** under the memorandum is also a **Covered Party** under a nuclear energy liability policy issued by Mutual Atomic Energy Liability Underwriters, American Nuclear Insurers, Nuclear Insurance Association of Canada or any successor organizations, or would be a **Covered Party** under any such policy but for its termination upon exhaustion of its limit of liability; or

    2.   Resulting from the hazardous properties of nuclear material and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof or (b) the **Covered Party** is, or had this memorandum not been issued would be, entitled to indemnity from the United States of America or any agency thereof, under any agreement entered into by the United States of America or any agency thereof, with any person or organization; or

M 900 (Rev. 1-11)

3.  Resulting from hazardous properties of nuclear material, if:

    a.  The nuclear material (i) is at any nuclear facility owned by, or operated by or on behalf of a **Covered Party** or (ii) has been discharged or dispersed there from; or

    b.  The nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of a **Covered Party;** or

    c.  The **bodily injury** or **property damage** arises out of the furnishing by a **Covered Party** of services, materials, parts of equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions, or Canada, this exclusion c. applies only to property damage to such nuclear facility and any property thereat.

As used in this exclusion:

    a.  "Hazardous properties" include radioactive, toxic or explosive properties;

    b.  "Nuclear material" means source material, special nuclear material, or by-product material;

    c.  "Source material", "special nuclear material" and "by-product material" have the meaning given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

    d.  "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

    e.  "Waste" means any waste material (i) containing by-product material and (ii) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (f) (i) or (ii) hereof;

    f.  "Nuclear facility" means: (i) any nuclear reactor; (ii) any equipment or device designed or used for (aa) separating the isotopes of uranium or plutonium, (bb) processing or utilizing spent fuel or (cc) handling, processing or packaging waste; (iii) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the **Covered Party** at the premises where such equipment or device is located consists of or contains more than 25 grams of uranium m235; (iv) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste; and (v) includes the site on which any of the foregoing is located, all operations conducted on such site, and all premises used for such operation;

    g.  "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

    h.  "Property damage" includes all forms of radioactive contamination of property.

W.  To liability caused directly or indirectly by, arising out of or resulting from oral or written publication of material, if done by or at the direction of the **Member Agency** with knowledge of its falsity.

X.  To liability caused directly or indirectly by, arising out of or resulting from **fungi** or bacteria of any type regardless of the cause of the growth, proliferation or accretion.

Y.  To liability arising out of the ownership, maintenance, use or operation of any railroad yard, track, facility or equipment.

Z.  To liability arising out of the ownership, maintenance, use or operation of, loading, unloading, or entrustment to others of owned, non-owned, or hired trains or other railroad equipment.

AA.  To liability for **Bodily Injury, Property Damage** or **Personal Injury** resulting from an act which is a violation of State or Federal criminal law, County or Municipal Ordinance committed by any **Covered Party.**  This exclusion applies even if: (1) such **Covered Party** lacks the mental capacity to form intent; (2) such **Bodily Injury, Property Damage** or **Personal Injury** is of a different kind or degree than expected or intended; or (3) such **Bodily Injury, Property Damage** or **Personal Injury** is sustained by a different person, or persons, other than expected or intended.

This exclusion applies whether or not the **Covered Party** is charged or convicted of a violation of State or Federal criminal law, County or Municipal Ordinance.

M 900 (Rev. 1-11)

BB. To methamphetamine officers who have not completed training and/or received proper certification.

CC. To liability resulting from or arising out of the activities of any member of a K-9 unit that has not completed training and/ or received proper certification.

DD. To liability for daycare operations that are required but fail to be appropriately licensed.

EE. To liability resulting from or arising out of a fireworks display not directly supervised by a qualified pyrotechnician.

## V.  WORDS AND PHRASES WITH SPECIAL MEANING

**Aircraft** means a vehicle designed for the transport of persons or property primarily in the air.

**Automobile** means a land motor vehicle or trailer licensed for highway use.

**Authorized Volunteer** means an individual who renders any service at the direction of and directly for the benefit of the **Member Agency** (as designated in the Declarations) without expectation of receiving a wage or salary, and shall include unpaid officers, Board or Commission members of any **Member Agency**.

**Bodily injury** means physical injury, sickness, disease, disability or death sustained by a person and includes any resulting mental injury, emotional distress, shock or loss of services.

**Covered Party** means any person or entity set forth in Section III of this memorandum.

**Defense costs** means all fees and expense caused by and relating to the adjustment, investigation, defense or litigation of a claim including attorneys' fees, court costs and interest on judgments accruing after entry of judgment. **Defense costs** shall not include the office expenses of the **Covered Party** or the salaries of employees or officials of any **Covered Party.**

**Employee** means an individual who receives wages or salary directly from the **Member Agency** (as designated in the Declarations) for work performed at the direction of and directly for the benefit of the **Member Agency**.

**Fungi** means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by **fungi**.

**Hired automobile** means an automobile used under contract on behalf of or loaned to the **Member Agency** provided such automobile is not owned by or registered in the name of (1) the **Member Agency** or (2) an employee or servant of the **Member Agency.**

**Member Agency** means the local public agency designated in the declarations and shall not include any other entity or agency under which said designated **Member Agency** may do business unless specifically included in the declarations.

**MOPERM** means the Missouri Public Entity Risk Management Fund.

**Non-owned automobile** means an **automobile** not owned by or registered in the name of, hired by, leased or rented by, or loaned to the **Member Agency.**

**Occurrence** as applied to COVERAGES A and B means an accident during the coverage period, or an event that first occurs during the coverage period, or continuous, intermittent or repeated exposure to conditions that commence during the coverage period, any of which accidents, events or exposures causes **Bodily Injury** or **Property Damage** neither expected nor intended by the **Covered Party**. As applied to COVERAGES C and D, **Occurrence** means an accident during the coverage period, or an event that first occurs during the coverage period, or continuous, intermittent or repeated exposure to conditions that commence during the coverage period, any of which accidents, events or exposures causes **Bodily Injury, Personal Injury** or **Property Damage** neither expected nor intended by the **Covered Party**.  As applied to COVERAGES A, B, C and D, all injuries or damages arising out of continuous or repeated exposure to substantially the same general condition shall be considered as arising out of one **Occurrence**.  **Bodily Injury, Personal Injury,** or **Property Damage** that results from an act that is intended by the **Covered Party** to cause **Bodily Injury, Personal Injury,** or **Property Damage** is not an injury or damage that is neither expected nor intended.

**Owned Automobile** means an **automobile** owned by or under long term lease to the **Member Agency.**

**Personal Injury** means (a) false arrest, malicious prosecution, or willful detention; (b) libel, slander or defamation of character; (c) invasion of privacy; (d) wrongful entry or eviction, or other invasion of the right of private occupancy; (e) assault and battery; and (f) discrimination prohibited by law or violation of federal civil rights laws.

M 900 (Rev. 1-11)

**Property Damage** means (a) physical injury to or destruction of tangible property, including the loss of use thereof at any time, or (b) loss of use of tangible property which has not been physically injured or destroyed.

**Public Officials Errors and Omissions** means any and all breaches of duty by the **Covered Party** arising from negligent action or inaction, mistake, misstatement, error, neglect, inadvertence or omission by the **Covered Party** in the discharge of duties with the **Member Agency**, but does not include **Bodily Injury, Personal Injury** or **Property Damage** either expected or intended by the **Covered Party** that results from an act that is intended by the **Covered Party** to cause **Bodily Injury, Personal Injury** or **Property Damage.**

**Ultimate Net Loss** means the sum actually paid or payable in cash in the settlement or satisfaction of losses, for which the **Covered Party** is liable either by (1) adjudication or (2) compromise with the written consent of **MOPERM**, after making proper deduction for all recoveries and salvages collectible.   **Ultimate Net Loss** does not include **Defense Costs**. **MOPERM'S** obligation to pay any **Ultimate Net Loss** shall under no circumstances exceed the amount of **MOPERM'S** Limit of Liability.

**Use** of an **automobile** includes the loading and unloading thereof.

**Watercraft** means a vehicle designed for the transport of persons or property primarily in or on water.

VI.   **CONDITIONS**

A.   **Deposit/Adjustment.**   All deposits and retrospective adjustments for this adjustment shall be computed in accordance with the rating plans developed by **MOPERM.**

B.   **Inspection and Audit.**   MOPERM shall be permitted but not obligated to inspect the **Member Agency's** property and operations at any time.   **MOPERM** may examine and audit the **Member Agency's** books and records at any time prior to cessation of the **Member Agency's** financial obligations under **MOPERM's** rating plan.

C.   **Covered Party's Duties in the Event of Occurrence, Claim or Suit.**

1.   In the event of an **occurrence,** written notice containing particulars sufficient to identify the **Covered Party** and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the **Covered Party** to MOPERM or any of its authorized agents as soon as practicable.

2.   If claim is made or suit brought against the **Covered Party,** the **Covered Party** shall immediately forward to **MOPERM** every demand, notice, summons or process received.

3.   The **Covered Party** shall cooperate with **MOPERM** and, upon **MOPERM's** request, assist in making settlements, in the conduct of suits and in enforcing any right of contribution or indemnity against any person or organization who may be liable to the **Covered Party** because of injury or damage with respect to which coverage is afforded under this memorandum; and the **Covered Party** shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses. The **Covered Party** shall not, except at the **Covered Party's** cost, voluntarily make payment, assume any obligation or incur any expense other than for first aid or damage mitigation.

4.   MOPERM shall not be liable for **occurrences,** suits or claims in which the **Member Agency** fails to comply with this Subsection C.

D.   **Action Against MOPERM.**   No action shall lie against MOPERM unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this memorandum, nor until the amount of the **Covered Party's** obligation to pay shall have been finally determined either by judgment against the **Covered Party** after actual trial or by written agreement of the **Covered Party,** the claimant and **MOPERM.**

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this memorandum to the extent of the coverage afforded by this memorandum.   No person or organization shall have any right under this memorandum to join MOPERM as a party to any action against **Covered Party** to determine the **Covered Party's** liability, nor shall **MOPERM** be impleaded by the **Covered Party** or the **Covered Party's** legal representative.   Bankruptcy or insolvency of the **Covered Party** or of the **Covered Party's** estate shall not relieve MOPERM of any of its obligations hereunder.

M 900 (Rev. 1-11)

E.  **Other Coverage.**  The coverage afforded in this memorandum shall be excess of and not contribute with any other valid and collectible coverage, other than any excess or umbrella coverage procured by **MOPERM** or the **Member Agency.**

F.  **Multiple Coverage Periods.**  An **occurrence** with a duration of more than one coverage period shall be treated as a single **occurrence** arising during the coverage period when the **occurrence** begins.

G.  **Subrogation**.  In the event of any payment under this memorandum, **MOPERM** shall be subrogated to all the **Covered Party's** rights of recovering therefor against any person or organization and the **Covered Party** shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights.  The **Covered Party** shall do nothing after loss to prejudice such rights.

H.  **Withdrawal/Cancellation.**  **MOPERM** may cancel the **Member Agency's** participation in **MOPERM** for non-payment of deposit or retrospective adjustment with 10 days' advance written notice.

I.  **Changes.**  This memorandum shall not be changed except by written endorsement hereto.

J.  **Increase in Hazard.**  Unless otherwise provided in writing added hereto, **MOPERM** shall not be liable for loss occurring while hazards are increased by any means within the control or knowledge of the **Member Agency.**

K.  **Assessments.**   If contributions received by **MOPERM** in any year do not produce sufficient funds to pay claims which are due for that year, the **Member Agency** shall be subject to an assessment.  This condition shall also apply to any **Member Agency** who has withdrawn from **MOPERM** but was a **Member Agency** in the year for which the assessment is required.

L.  **Refunds.**   If contributions received by **MOPERM** in any fiscal year produce an ending balance exceeding projected needs and adequate reserves, the **Member Agency** may, at the discretion of the Board of Trustees, be eligible for a refund.

M 900 (Rev. 1-11)



TRIDENT
PUBLIC RISK SOLUTIONS

*Member Argo Group*

July 9, 2018

Ms. Rebecca Shavers
Claims Manager
MOPERM
3425 Constitution Court – 3rd Floor
P.O. Box 7110
Jefferson City, MO 65102

RECEIVED
JUL 16 2018
MOPERM

     **RE: Named Insured: Lincoln County Missouri**
        **Russell Faria v. Sergeant Ryan McCarrick, et al. (Including Lincoln County)**
        **USDC: Eastern District of Missouri – Eastern Division**
        **Case Number: 4:16-CV-01175 JAR**

     **Trident Claim Number: TNT-0136733**

Dear Ms. Shavers:

Trident Insurance Services is the authorized claim representative of Argonaut Great Central Insurance Company ("Argonaut"). As you know, has been providing a defense to Lincoln County and the individual county defendants under our Law Enforcement Liability policy issued to the County.

It is my understanding that you have also acknowledged your defense obligation to the County and individual county defendants. We have spoken in the past about arranging a cost sharing agreement for the defense of our mutual insured. To date, Argonaut has incurred $⬛⬛⬛⬛⬛ in defense costs in the above litigation. At this time, I am seeking reimbursement of 50% of these costs ($⬛⬛⬛⬛) from MOPERM and a commitment to pay 50% of any future costs incurred in this litigation.

Please contact me at your earliest convenience so we can discuss this matter and advise what information and documentation you require in order to process the reimbursement request.

If you have any questions regarding this matter, please do not hesitate to contact me at (413) 773-6355.

Sincerely,

Robert A. St. Jean
Examiner – Principal Claims

EXHIBIT
B

PO Box 469009
San Antonio TX 78246
www.argolimited.com

T 800-444-3916
F 413-772-8503