UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| ARGONAUT GREAT CENTRAL INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 4:17-CV-00762 JAR |
| LINCOLN COUNTY, MISSOURI, et al., | ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on the following motions: Plaintiff's Motion for Summary Judgment (Doc. No. 75); Lincoln County Defendants' Motion for Judgment on the Pleadings (Doc. No. 74); and Defendant Michael Merkel's Motion for Summary Judgment (Doc. No. 78) or alternatively, Motion for Judgment on the Pleadings (Doc. No. 80)[1]. The motions are fully briefed and ready for disposition.[2]

I. **Factual and procedural background**

This case arises out of a civil rights action filed by Russell Scott Faria against Lincoln County, Missouri, Sergeant Ryan J. McCarrick, Detective Patrick Harney, and Prosecuting Attorney Leah Askey (the "Lincoln County Defendants"), and Detective Michael Merkel ("Merkel"), styled Russell Scott Faria v. Sergeant Ryan J. McCarrick, et al., Case No. 4:16-CV-01175 JAR ("the Underlying Action"), now pending before this Court. Each individual was sued in his or her individual capacity only. Plaintiff Argonaut Great Central Insurance Company

---

[1] In his motion for judgment on the pleadings, Merkel joins the legal arguments asserted by the Lincoln County Defendants in their motion for judgment on the pleadings and incorporates them by reference.

[2] Defendant Faria has joined the legal arguments of Defendants by consent. (Doc. Nos. 90, 100)

1

("Argonaut") seeks a declaratory judgment that it has no duty to defend or indemnify the Lincoln County Defendants and Merkel in the Underlying Action. Because the dispute between the parties involves the interpretation of an insurance policy and pleadings in the Faria action, the material facts are not disputed.

### A. Underlying action

Faria was detained in furtherance of an investigation in December 2011 and formally arrested in January 2012 for the murder of his wife Betsy Faria. In November 2013, Faria was convicted of his wife's murder and sentenced to life imprisonment. He appealed, and on retrial in November 2015, was acquitted. On July 19, 2016, Faria filed the Underlying Action, alleging that Defendants violated his Fourth and Fourteenth Amendment rights by arresting and prosecuting him for his wife's murder. Specifically, Faria alleges that investigators from the Lincoln County Sheriff's Department and the Lincoln County Prosecuting Attorney fabricated evidence, ignored exonerating evidence, and failed to investigate the obvious suspect – Pamela Hupp. On September 15, 2016, Faria was granted leave to file his First Amended Complaint adding Lincoln County as a defendant and adding a Monell claim[3] against Lincoln County through Prosecuting Attorney Askey in her official capacity.

The following claims are currently pending in the Underlying Action: Count I (against Sergeant McCarrick) Fourth Amendment initial seizure of Faria for more than 24 hours without probable cause; Count II (against Sergeant McCarrick) Fourth Amendment second seizure and incarceration of Faria without probable cause; Count III (against Prosecuting Attorney Askey) Fourth Amendment second seizure and incarceration of Faria without probable cause; Count IV

---

[3] Monell v. Department of Social Services, 436 U.S. 658, 694 (1978) (holding "when execution of a government's policy or custom … inflicts the injury[,] … the government as an entity is responsible under § 1983").

(against all underlying Defendants) Fourth and Fourteenth Amendment conspiracy to seize the person and deny substantive due process; and Count VI (against Lincoln County through Askey in her official capacity as policymaker) Monell liability.[4] Argonaut moves for summary judgment on both its duty to defend and duty to indemnify Defendants for the claims asserted in the Underlying Action. The Lincoln County Defendants and Merkel seek judgment in their favor declaring that Argonaut has a duty to defend them and dismissing Argonaut's claim that it has no duty to indemnify.

**B. Insurance policies**

Argonaut issued a liability insurance policy, AGCIC Policy No. 4627390-00, to Lincoln County, including its officers and employees, effective January 1, 2012 to January 1, 2013. That policy was renewed by Argonaut and Lincoln County for the period January 1, 2013 to January 1, 2014, AGCIC Policy No. 4627390-01. The Policies contain multiple coverage parts including Law Enforcement Liability, Public Officials' Liability, Commercial General Liability, and Commercial Excess Liability.[5]

Section I, Part A of the Law Enforcement Liability Coverage Part states in relevant part that:

> We will pay those sums that the insured becomes legally obligated to pay as "damages" resulting from a "wrongful act" to which this insurance applies that is committed during the course and scope of "law enforcement activities", or which arise out of your

---

[4] On Plaintiff's motion, Count V asserting a malicious prosecution claim against McCarrick and Merkel was dismissed without prejudice. (No. 4:16-CV-1175, Doc. Nos. 38, 39)

[5] Argonaut maintains that the Public Officials Liability, Commercial General Liability, and Commercial Excess Liability coverage parts do not apply to the Underlying Action because they specifically exclude law enforcement activity, are "claims-made" coverage, and/or are excess over underlying insurance. The Lincoln County Defendants do not argue otherwise, focusing instead on the Law Enforcement Liability coverage. Merkel argues these other coverage parts cannot be addressed because questions regarding Argonaut's duty to indemnify are not yet ripe.

ownership, maintenance or use of premises for the purpose of conducting "law enforcement activities".

We will have the right and duty to defend the insured against any "suit" seeking those "damages". However, we will have no duty to defend the insured against any "suit" seeking "damages" for a "wrongful act" to which this insurance does not apply. We may, at our discretion, investigate any "wrongful act" and settle any claim or "suit" that may result.

"Wrongful act" is defined as:

any act, error or omission flowing from or originating out of a "law enforcement activity". All acts, errors or omissions, committed by one or more insureds that are substantially the same or are in any way directly or indirectly related – either logically, causally, or temporally – shall be deemed to constitute one "wrongful act", regardless of the number of claims or claimants.

"Law enforcement activity" is defined as:

administration of the criminal justice system and/or any act, error or omission of your law enforcement agency, its officials, officers, "employees" or volunteers. "Law Enforcement Activity" also includes the use, operation or maintenance of any premises by your law enforcement agency.

The Policies further provide that "[t]his insurance applies to "damages" arising out of a "wrongful act" only if the "wrongful act" was first committed:

    a. By an insured in the course of his or her "law enforcement activities" and
    b. During the policy period.

The "Exclusions" section of the Policies' Law Enforcement Liability Coverage Part states in relevant part that "this insurance does not apply to:"

Any claim arising out of:

    a    dishonest, malicious, fraudulent or criminal act, error or omission by any person including actual or threatened acts of sexual abuse or molestation, or
    b.    a knowing violation of any law, statute or governmental regulation.

The "Conditions" section of the Policies' Law Enforcement Liability Coverage Part, titled "Conditions," states in part:

> The insurance provided by this Coverage Part is excess over any other collectible insurance. We will have no duty to defend the insured against any "suit" or claim for "damages" if any other insurer has a duty to defend the insured against that "suit".

The Policies' Common Policy Conditions form, which is applicable to "all coverage parts," states in Paragraph H:

> Because you are a public institution, you may be entitled to a governmental immunity. This policy does not constitutive a waiver of any governmental immunity to which you are entitled.

The Policies also include a Sovereign Immunity Non-Waiver Endorsement which modifies the Policies' coverage parts including the Commercial General Liability, Law Enforcement Liability, and Public Officials' Liability Coverage parts. The Endorsement states in part:

> In consideration of the premium charged, it is hereby agreed and understood that the policy(ies), coverage part(s) or coverage form(s) issued by us provide(s) no coverage for any "occurrence", "offense", "accident", "wrongful act", claim or suit for which any insured would otherwise have an exemption or no liability because of sovereign immunity, any governmental tort claims act or laws, or any other state or federal law. Nothing in this policy, coverage part or coverage form waives sovereign immunity for any insured.

In 2011, the Missouri Public Entity Risk Management Fund ("MOPERM")[6] provided liability insurance coverage to Lincoln County and its officers, officials, and employees. The 2011 MOPERM policy provided coverage during the policy period from January 1, 2011 to

---

[6] MOPERM is a statutorily-created corporate body that provides liability insurance coverage for Missouri public officials, cities, counties, and various other public entities. Missouri Pub. Entity Risk Mgmt. Fund v. Inv'rs Ins. Co. of Am., 451 F.3d 925, 926 (8th Cir. 2006).

January 1, 2012 for multiple types of liability including Public Officials Errors and Omissions Liability and Personal Injury Liability.

The MOPERM Policy defines "occurrence" in part:

As applied to COVERAGES C and D. Occurrence means an accident during the coverage period, or an event that first occurs during the coverage period, or continuous, intermittent or repeated exposure to conditions that commence during the coverage period, any of which accidents, events or exposures causes Bodily Injury, Personal Injury or Property Damage neither expected nor intended by the Covered Party.

As applied to COVERAGES A, B, C and D All injuries or damages arising out of continuous or repeated exposure to substantially the same general condition shall be considered as arising out of one Occurrence. Bodily Injury, Personal Injury, or Property Damage that results from an act that is intended by the Covered Party to cause Bodily Injury, Personal Injury, or Property Damage is not an injury or damage that is neither expected nor intended.

Section VI ("Conditions") of the Memorandum of Coverage of the MOPERM Policy states the following:

F. Multiple Coverage Periods. An occurrence with a duration of more than one coverage period shall be treated as a single occurrence arising during the coverage period when the occurrence begins.

**II.   Legal standards**

The standards applicable to summary judgment motions are well settled. Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Lynn v. Deaconess Medical Center, 160 F.3d 484, 486 (8th Cir. 1998) (citing Fed. R. Civ. P. 56(c)). The party seeking summary judgment bears the initial responsibility of informing the court of the basis of its motion and identifying those portions of the affidavits, pleadings, discovery and disclosure materials on file which it believes demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett,

477 U.S. 317, 323 (1986). When such a motion is made and supported by the movant, the nonmoving party may not rest on his pleadings but must produce sufficient evidence to support the existence of the essential elements of his case on which he bears the burden of proof. Id. at 324; Crossley v. Georgia-Pacific Corp., 355 F.3d 1112, 1113 (8th Cir. 2004). The filing of cross-motions for summary judgment does not change the legal standard. Each motion must be evaluated independently, with facts viewed in a light most favorable to the nonmoving party. Jaudes v. Progressive Preferred Ins. Co., 11 F. Supp.3d 943, 947 (E.D. Mo. 2014).

A motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) is governed by the same standard used to address a motion to dismiss for failure to state a claim under Rule 12(b)(6). Clemmons v. Crawford, 585 F.3d 1119, 1124 (8th Cir. 2009) (internal citation omitted). The Court accepts as true all facts pleaded by the nonmoving party and grants all reasonable inferences from the pleadings in favor of the nonmoving party. Id. "When considering a motion for judgment on the pleadings … the court generally must ignore materials outside the pleadings …" Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999). However, courts "may consider materials that necessarily are embraced by the pleadings or that are part of the public record and do not contradict the complaint." Mickelson v. Cty. of Ramsey, 823 F.3d 918, 923 (8th Cir. 2016) (citing Porous Media, 186 F.3d at 1079). Similar to summary judgment, a judgment on the pleadings is appropriate "where no material issue of fact remains to be resolved and the movant is entitled to judgment as a matter of law." Id. (quoting Faibisch v. University of Minnesota, 304 F.3d 797, 803 (8th Cir. 2002)).

Here, the Lincoln County Defendants move for judgment on the pleadings seeking not just dismissal of Argonaut's complaint, but an affirmative judgment in their favor declaring that Argonaut has a duty to defend them from the claims raised in the Underlying Action. As such,

the analysis more closely resembles the summary judgment standard. See Wright & Miller, Federal Practice and Procedure: Civil 3d § 1368, 222–23 (3d ed. 2004). The Court will, therefore, apply the summary judgment standard to the Lincoln County Defendants' pending motion. Defendant Merkel filed both a motion for summary judgment and motion for judgment on the pleadings; however, the Court only finds it necessary to review Merkel's motion for summary judgment to resolve the case. Accordingly, Merkel's motion for judgment on the pleadings will be denied as moot.

**III. Discussion**

An insurer's duty to defend a suit against its insured arises "whenever there is a potential or possible liability to pay based on the facts at the outset of the case and is not dependent on the probable liability to pay based on the facts ascertained through trial." McCormack Baron Mgmt. Servs., Inc. v. Am. Guar. & Liab. Ins. Co., 989 S.W.2d 168, 170 (Mo. 1999). The duty to defend is determined by comparing the language of the insurance policy with the allegations in the complaint. Secura Ins. v. Horizon Plumbing, Inc., 670 F.3d 857, 861 (8th Cir. 2012) (citing McCormack, 989 S.W.2d at 170); see also Williams v. Employers Mut. Cas. Co., No. 4:13-CV-2393 RLW, 2015 WL 892556, at *3 (E.D. Mo. Mar. 2, 2015), aff'd, 845 F.3d 891 (8th Cir. 2017). If the complaint merely alleges facts that give rise to a claim potentially within the policy's coverage, the insurer has a duty to defend. McCormack, 989 S.W.2d at 170–71. In addition, an insurer cannot "merely rest upon the allegations contained within the petition." Interstate Bakeries Corp. v. OneBeacon Ins. Co., 686 F.3d 539, 542 (8th Cir. 2012) (quoting Stark Liquidation Co. v. Florists' Mut. Ins. Co., 243 S.W.3d 385, 392 (Mo. Ct. App. 2007)). Rather, the insurer has the duty to look beyond the allegations in the complaint to determine whether coverage is possible. Id.

Unlike the duty to defend, "[t]he duty to indemnify is determined by the facts as they are established at trial or as they are finally determined by some other means, for example through summary judgment." McCormack, 989 S.W.2d at 173. Under Missouri law, the duty to defend is broader than the duty to indemnify. Lampert v. State Farm Fire and Cas. Co., 85 S.W.3d 90, 93 (Mo. Ct. App. 2002). An insurer may have a duty to defend claims falling within the policy even if it may not ultimately be obligated to indemnify the insured. Millers Mut. Ins. Ass'n of Illinois v. Shell Oil Co., 959 S.W.2d 864, 871 (Mo. Ct. App. 1997).

The Policies at issue provide coverage to an insured for "damages" he or she becomes legally obligated to pay resulting from a "wrongful act," provided it is "first committed" in the course of the insured's "law enforcement activities" and during the policy period, as well as a defense against any suit seeking those damages.

### A. Insureds[7]

The Policy defines an "insured" for purposes of the Law Enforcement Liability Coverage Part as any "elected official" and any "employee" of Lincoln County, Missouri (the named insured), provided they acted within the scope of their duties for the County and were "motivated, at least in part, by a purpose to serve [the County]." At the time of the events at issue, McCarrick, Harney, and Merkel were clearly employees of Lincoln County in the Sheriff's Department and Askey was the elected prosecutor of Lincoln County. Together they are alleged to have acted within the scope of their law enforcement duties to investigate, prosecute, convict, and imprison Faria. Accordingly, Defendants are insureds under the Policies. As insureds, it is Defendants' burden to show that a claim is potentially within the Policies' coverage. Secura Ins.,

---

[7] In its complaint for declaratory judgment, Argonaut claimed the Underlying Defendants were not insureds under the Policies. (First Amended Petition for Declaratory Judgment ("FAP"), Doc. No. 55 at ¶¶ 32-33) Because Argonaut fails to address this claim as a basis for summary judgment, it is deemed to have abandoned it and the Court need not address it further.

9

670 F.3d at 861–62; American States Ins. Co. v. Mathis, 974 S.W.2d 647, 649 (Mo. Ct. App. 1998).

   **B. Wrongful act**

The Policies' Law Enforcement Liability coverage applies to claims arising from a "wrongful act," defined as "any act, error or omission flowing from or originating out of a 'law enforcement activity.'" In support of its contention that the Policies provide no coverage for the claims alleged in the Underlying Action, Argonaut argues that courts interpret similar liability insurance clauses to cover only negligent conduct, not intentional misconduct, citing Matthew T. Szura & Co. v. Gen. Ins. Co. of Am., 543 F. App'x 538, 543 (6th Cir. 2013) and Cincinnati Ins. Co. v. Meramec Valley Bank, 259 F. Supp. 2d 922, 926 (E.D. Mo. 2003), and that the Faria complaint alleges only intentional acts, i.e., conduct that "went far beyond mere negligence." In particular, Argonaut points to the following allegations:

- The conduct of the Underlying Defendants was "truly egregious and extraordinary," "[s]hocks the conscience," amounts to "brutal and inhumane abuse of official power," and showed "systematic pressure to implicate the defendant in the face of contrary evidence." (Doc. 77-10 at ¶ 500);

- Their actions were malicious or recklessly indifferent. (Id. at ¶¶ 401-402, 431, 458, 479, 514);

- They committed "[f]alsification of evidence and related dishonest practices." (Id. at ¶ 409);

- McCarrick and Merkel "fabricated evidence that there was blood clean up", that "Askey participated in this fabrication," and that the defendants concealed the fabrication. (Id. at ¶¶ 483-485); and

- Merkel and Harney "coerced or coached Ms. Hupp's testimony" against Faria and thereby "manufactured false evidence to fill the deficiencies in the case." (Id. at ¶¶ 494-495)

Defendants maintain that the Policies clearly and unambiguously provide coverage for "any act" flowing from or originating out of a "law enforcement activity," thereby encompassing intentional acts, and that Argonaut's attempt to exclude intentional acts from coverage contravenes the obvious purpose of the insurance, which is to provide coverage for civil rights claims.

Szura and Cincinnati Ins. are inapposite because in those cases, the policies at issue narrowly defined "wrongful act" to include "any actual or alleged *negligent* act, error or omission," and "occurrence" as an "accident" that "unexpectedly or *unintentionally*" resulted in injury. Here, there is nothing in the Policies' definition of "wrongful act" that limits its application to negligence claims only. Instead, the definition encompasses "*any* act … flowing from or originating out of a "law enforcement activity." The general rules for interpretation of contracts apply to insurance policies. Progressive Cas. Ins. Co. v. Morton, 140 F. Supp. 3d 856, 860–61 (E.D. Mo. 2015) (citation omitted). Where, as here, the policy language is unambiguous, the Court must enforce it as written. TAMKO Bldg. Prod., Inc. v. Factual Mut. Ins. Co., 890 F. Supp. 2d 1129, 1135 (E.D. Mo. 2012) (citing Farmland Indus., Inc. v. Republic Ins. Co., 941 S.W.2d 505, 508 (Mo. 1997)); Dibben v. Shelter Ins. Co., 261 S.W.3d 553, 556 (Mo. Ct. App. 2008).

Moreover, an insurance policy must be construed to give effect to the intent of the parties. City of Lee's Summit v. Missouri Public Entity Risk Management, 390 S.W.3d 214, 220 (Mo. Ct. App. 2012) (internal citation omitted). In this case, the coverage part at issue is entitled "Law Enforcement Liability Coverage." The title indicates that the parties contracted for the purpose of providing coverage for claims associated with the work-related activities of the County's law enforcement personnel. Law enforcement personnel are often subject to claims

that, by definition, involve intentional conduct, such as false arrest, malicious prosecution and § 1983 actions. It appears unlikely, therefore, that the County would have intended to purchase insurance that did not provide some coverage for such claims. See Sampson v. Kofoed, No. 8:07CV155, 2016 WL 7971575, at *16 (D. Neb. Mar. 30, 2016); Scottsdale Ins. Co. v. City of Easton, No. CIV.A. 07-3079, 2009 WL 673291, at *3 (E.D. Pa. Mar. 9, 2009), rev'd, 379 F. App'x 139 (3d Cir. 2010); Imperial Cas. & Indem. Co. v. State, 714 A.2d 1230, 1238 (Conn. 1998).

In any event, the facts alleged in the Underlying Action do not rule out the possibility that Defendants acted without intent to cause harm. Faria's complaint also alleges that Defendants were recklessly indifferent to his constitutional rights and "plainly incompetent." (Doc. No. 77-10 at ¶¶ 401, 408, 431, 458, 479, 513, 514) ("[a]ll of the Defendants were plainly incompetent and/or all of the Defendants knowingly violated the law"; "[t]he action of Defendants and each of them were "malicious or recklessly indifferent to [Faria's] constitutional rights"). So long as an underlying complaint includes allegations that fit within an insurance policy's coverage, the duty to defend is triggered even if it also includes allegations of conduct that would be excluded. Wood v. Safeco Ins. Co. of Am., 980 S.W.2d 43, 47 (Mo. Ct. App. 1998).

### C. Wrongful act during policy period

Under the Policies' Law Enforcement Liability coverage, multiple acts, errors or omissions can constitute one "wrongful act" if they are "in any way directly or indirectly related – either logically, causally, or temporally." Argonaut contends that as pled, each instance of the underlying Defendants' alleged conduct is "logically, causally, and/or temporally related" to the others and thus comprises a single wrongful act first committed on December 28, 2011, when the investigation of Faria began, prior to the Policies' coverage period beginning January 1, 2012.

Although Missouri courts have not addressed when insurance coverage is triggered for civil rights claims for wrongful conviction, other jurisdictions addressing the issue have found that "such claims seeking damages for constitutional injuries resulting from arrest, conviction, and incarceration are analogous to claims for malicious prosecution." Lee's Summit, 390 S.W.2d at 220 (citing, *inter alia*, Genesis Ins. Co. v. City of Council Bluffs, 677 F. 3d 806, 815-16 (8th Cir. 2012) (§ 1983 claim in nature of malicious prosecution)); see also American States Preferred Insurance Co. v. McKinley, No. 07-0584CV-W-NKL, 2009 WL 1139122, at *8 (W.D. Mo. Apr. 28, 2009) ("The continuing conduct required in conspiring to deprive someone of the right to a fair trial poses a risk of injury similar to that posed by the continuing conduct of malicious prosecution . . .").

Missouri follows the majority view that in the context of insurance, malicious prosecution – either civil or criminal – occurs when the defendant begins to institute prosecution of charges against the plaintiff. Lee's Summit, 390 S.W.3d at 220 (citing Hampton v. Carter Enters., Inc., 238 S.W.3d 170, 176 (Mo. Ct. App. 2007)); see also Am. Family Mut. Ins. Co. v. McMullin, 869 S.W.2d 862, 864 (Mo. Ct. App. 1994) (holding that the filing date of the underlying lawsuit controls whether an insurance policy provides coverage for malicious prosecution). As in Lee's Summit, Faria's § 1983 claims for deprivation of his constitutional rights are in the nature of malicious prosecution for purposes of insurance coverage. Criminal charges were filed against Faria on January 4, 2012, within the Policies' coverage period, and at that time became an actionable "wrongful act" covered by the plain terms of the Policies.

In summary, the Court finds and concludes that the facts alleged in the Underlying Action give rise to claims potentially within the Policy's coverage and that Argonaut has a duty to defend Defendants from those claims. To extricate itself from a duty to defend, Argonaut must

demonstrate there is no possibility of coverage. Custom Hardware Eng'g & Consulting, Inc. v. Assurance Co. of Am., 295 S.W.3d 557, 561 (Mo. Ct. App. 2009) (internal citation omitted).

    **D. Exclusionary provisions**

    **1. Malicious conduct exclusion**

Argonaut argues that coverage is defeated by the Policies' exclusion for "malicious, fraudulent or criminal acts, errors or omissions" and for "knowing violations of the law," citing Custom Hardware, 295 S.W.3d at 563, a case upholding a similar policy exclusion. Argonaut contends that each and every count of Faria's complaint alleges that Defendants acted maliciously and "in the face of a perceived risk that they would violate federal law." Argonaut also points to Faria's allegations that Defendants "knowingly violated the law" and that their conduct was "truly egregious and extraordinary," "shocks the conscience," amounted to a "brutal and inhumane abuse of official power," and "went far beyond mere negligence."

When relying on an exclusion to demonstrate no possibility of coverage, the insurer has the burden of establishing that the exclusion applies. Hartford Accident & Indent. Co. v. Doe Run Res. Corp., No. 4:08-CV-1687 CAS, 2010 WL 1687623, at *2 (E.D. Mo. April 26, 2010) (citing American Family Mut. Ins. Co. v. Bramlett ex rel. Bramlett, 31 S.W.3d 1, 4 (Mo. Ct. App. 2000)). Exclusionary clauses are strictly construed against the insurer. Agri. Ins. Co. v. Focus Homes, Inc., 212 F.3d 407, 410 (8th Cir. 2000) (citation omitted) ("Exclusions are to be strictly interpreted against the insurer and an insurer denying coverage because of an exclusion bears the burden of proof."); Stan Koch & Sons Trucking, Inc. v. Great W. Cas. Co., 517 F.3d 1032, 1040 (8th Cir. 2008).

Unlike in Custom Hardware, where the allegations of the complaint alleged *only* intentional conduct on the part of the insured,[8] as discussed above in Section III.B., the facts alleged in the Underlying Action do not rule out the possibility that Defendants acted without intent to cause harm. Specifically, Faria alleges incompetence and reckless indifference to his constitutional rights, which fall short of the Policies' disqualifying "intentional misconduct" provisions. See DecisionOne Corp. v. ITT Hartford Insurance Group, 942 F. Supp. 1038, 1043 (E.D. Pa. 1996) (finding that allegation in complaint that insured's acts were "reckless" was not an allegation of intentional conduct because "recklessness is something more than negligence but less than an intentional act"). Where allegations "potentially support a covered claim," the insurer has a duty to defend its insured. Wood, 980 S.W.2d at 47. Thus, Argonaut has failed to meet its burden to show this exclusion applies and precludes all possibility of coverage.

### 2. Primary versus excess coverage

The Law Enforcement Liability Coverage part provides that it is "excess over any other collectible insurance" and that Argonaut "will have no duty to defend the insured against any 'suit' or claim for 'damages' if any other insurer has a duty to defend the insured against that 'suit.' " Argonaut argues the coverage afforded under its Policies – if any – for the claims asserted in the Underlying Action is excess over Defendants' MOPERM Policy, effective January 1, 2011 to January 1, 2012. Argonaut's argument is premised on its contention that the "wrongful act" was first committed on December 28, 2011, when the investigation of Faria

---

[8] In Custom Hardware, the court determined that the underlying action was premised only on intentional conduct given allegations that the insured had acted "deliberately, knowingly, willfully, maliciously and oppressively," "willfully ... and with the intent to cause injury," and "willfully and knowingly." 295 S.W.3d at 563. The complaint made no mention or implication of conduct sounding in negligence, recklessness, inadvertence, error, or mistake. Id.

15

began, which was prior to its Policies' effective date of January 1, 2012 and during MOPERM's coverage period.

As discussed above in Section III.C., however, a "wrongful act" does not become actionable as an insurable event until the underlying claimant sustains actual damage. In a civil rights action for wrongful conviction, actual damage is sustained when criminal charges are filed. Lee's Summit, 390 S.W.3d at 220. The complaint in the Underlying Action alleges actionable conduct beginning January 4, 2012 – after the MOPERM Policy expired and Argonaut's Policies came into effect. Thus, any actions of Merkel or the Lincoln County Defendants after that date are part of the "wrongful act" covered by Argonaut's Policy.

### 3. Governmental immunity

Lastly, Argonaut argues that the Policies exclude coverage in the face of immunity, and that because the underlying Defendants are entitled to governmental immunity for the claims asserted in the Underlying Action, it has no duty to defend them against those claims.

According to the Common Policy Conditions applicable to all coverage parts, the Policies "do[] not constitute a waiver of any governmental immunity to which [the insured] is entitled." As pointed out by Defendants, this language is typically found in insurance policies that protect municipalities and other public entities because the purchase of insurance may operate as a waiver of that immunity. See White v. Jackson, No. 4:14CV1490 HEA, 2015 WL 1189963, at *5 (E.D. Mo. Mar. 16, 2015) (citing Brooks v. City of Sugar Creek, 340 S.W.3d 201, 208 (Mo. Ct. App. 2011) and Langley v. Curators of Univ. of Mo., 73 S.W.3d 808, 811 (Mo. Ct. App. 2002)); see also State ex rel. City of Grandview v. Grate, 490 S.W.3d 368, 372 (Mo. 2016) (no waiver of sovereign immunity when city purchased liability insurance policy disclaiming coverage for any actions prohibited by sovereign immunity).

Argonaut also relies on the Policies' Sovereign Immunity Non-Waiver Endorsement, which states in part that there is no coverage for any " 'wrongful act' … for which any insured would otherwise have an exemption or no liability because of sovereign immunity", noting that each of the Underlying Defendants have asserted governmental immunity in their respective answers and affirmative defenses.

An insurer's duty to defend is based on the allegations of the underlying action and the terms of the insurance policy, Secura, 670 F.3d at 861, and not on a factual determination of the underlying claims, Shelter Mut. Ins. Co. v. Ballew, 203 S.W.3d 789, 792 (Mo. Ct. App. 2006). Here, the Faria complaint alleges that the individual Defendants are not protected by qualified or prosecutorial immunities. (See Doc. No. 77-1 at ¶¶ 406-410, 472) ("The conduct of the Defendants was not based only on a mistaken but objectively reasonable belief that there was probable cause to hold, arrest or prosecute Mr. Faria and therefore Defendants are not entitled to qualified immunity"; "Prosecuting Attorney Askey has no absolute prosecutorial immunity for her conduct engaging in participating in and influencing the investigation of the murder of Betsy Faria before there was probable cause sufficient to warrant an arrest.") Whether immunities exist and apply depends on facts to be developed and presented in the course of the Underlying Action. Thus, Argonaut cannot prove the "immunity exclusions" apply, thereby precluding all possibility of coverage in this case.

**IV.    Conclusion**

For these reasons, the Court finds that the claims alleged in the Underlying Action are potentially covered under the Policies. Because the pleadings do not establish that an exclusion applies as a matter of law, the Court concludes that Argonaut has a duty to defend the Lincoln County Defendants and Defendant Merkel in the Underlying Action. However, as to Argonaut's

duty to indemnify, the Court is unable to make any determination at this time given the unresolved status of the Underlying Action.

Under Missouri law, two types of indemnity contracts exist: indemnity against loss, and indemnity against liability. Shapiro Sales Co. v. Alcoa, Inc., No. 4:06CV638 CDP, 2006 WL 2228987, at *3 (E.D. Mo. Aug. 3, 2006) (citing Burns & McDonnell Eng'g Co., Inc. v. Torson Constr. Co., Inc., 834 S.W.2d 755, 758 (Mo. Ct. App. 1992)). Under the former, a cause of action does not accrue until the indemnitee has sustained a loss in the form of payments made for obligations for which the indemnitee has been found liable. Id. (citations omitted). Under the latter, the cause of action accrues as soon as the liability against the indemnitee has become fixed and established, i.e., completely resolved. Id. Under either doctrine, Argonaut's duty to indemnify is not ripe for ruling. The Underlying Action has not yet been resolved, and Defendants thus have not sustained any loss, nor had their liability determined. Id.; see also Spirtas Co. v. Fed. Ins. Co., 481 F. Supp.2d 993, 997 (E.D. Mo. 2007), aff'd, 521 F.3d 833 (8th Cir. 2008) (claim for indemnity was not ripe for ruling because the underlying action had not yet been resolved).

"[W]here the controlling facts are unknown and the duty to defend arises out of potential coverage, resolution of the duty to indemnify must await the facts." Superior Equip. Co., Inc. v. Maryland Cas. Co., 986 S.W.2d 477, 484 (Mo. Ct. App. 1998). The Court only has before it the current petition in the Underlying Action. As one court noted, "[a] finding in the underlying actions that [the defendant] is not liable would make this Court's determination as to the duty to indemnify merely advisory opinions." Amerisure Mut. Ins. Co. v. Paric Corp., No. 4:04CV430-DJS, 2005 WL 2708873, at *9 (E.D. Mo. Oct. 21, 2005).

Accordingly,

**IT IS HEREBY ORDERED** that Lincoln County Defendants' Motion for Judgment on the Pleadings [74] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment [75] is **DENIED**.

**IT IS FURTHER ORDERED** that Michael Merkel's Motion for Summary Judgment [78] is **GRANTED**.

**IT IS FURTHER ORDERED** that Michael Merkel's Motion for Judgment on the Pleadings [80] is **DENIED as moot**.

A separate judgment will accompany this Memorandum and Order.

Dated this 8th day of August, 2018.

_____
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**